626 A.2d 158

Thomas N. SHIOMOS,[1] Appellant,

v.

COMMONWEALTH of Pennsylvania STATE EMPLOYES'
RETIREMENT BOARD, Appellee.

Thomas N. SHIOMOS, Appellant,

v.

ADMINISTRATIVE OFFICE OF PENNSYLVANIA
COURTS, Appellee.

Bernard SNYDER, Appellant,

v.

ADMINISTRATIVE OFFICE OF PENNSYLVANIA
COURTS, Appellee.

Supreme Court of Pennsylvania.

Argued Jan. 24, 1992.

Decided June 4, 1993.

1. Appellant Shiomos died April 26, 1993 while this appeal was pending.
That fact does not render the case moot as the outcome may have
relevance to his estate and also, the questions raised in this appeal have
an impact on recurring issues statewide.

F. Emmett Fitzpatrick, III, Philadelphia, for appellant.

Jeffrey B. Clay, Acting Chief Counsel, Nicholas Joseph Marcucci, Deputy, Irene Mary Chiavaroli, Asst. Counsel, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

In the present action this Court is asked to declare the Public Employee Pension Forfeiture Act[2], as applied to appellant Shiomos, an unconstitutional impairment of contract under Article 1, Section 17 of the Pennsylvania Constitution.[3] (Hereinafter the Forfeiture Act shall be referred to as Act 140). We reject appellant's challenge to the constitutionality of Act 140, and for the reasons that follow, affirm the orders of the Commonwealth Court.[4]

**2.** 43 P.S. § 1311, et seq., P.L. 752, No. 140 enacted July 8, 1978.

**3.** Article 1, Section 17 of the Pennsylvania Constitution states: "No *ex post facto law*, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed." (Emphasis in original.)

**4.** At issue in this appeal are three separate orders of the Commonwealth Court. In case No. 18 C.D.1989, 132 Pa.Commw.Ct. 379, 572 A.2d 1311, the Commonwealth Court affirmed the forfeiture of appellant Shiomos' pension by the Pennsylvania State Employes' Retirement Board under the Public Employes'' Pension Forfeiture Act, effective December 8, 1988. In case No. 251 C.D.1989 the Commonwealth Court affirmed the order of the Administrative Office of the Pennsylvania Courts (AOPC) which terminated appellant Shiomos' medical insurance coverage as of January 5, 1989. In case No. 250 C.D.1989, 132 Pa.Commw.Ct., 572 A.2d 1313, the Commonwealth Court affirmed the order of the AOPC terminating the medical insurance coverage of appellant Snyder, effective January 5, 1989. However, appellant is only offering argument as to the decision of the Commonwealth Court in case No. 18 C.D.1989, 132 Pa.Commw.Ct. 379, 572 A.2d 1311, thus this opinion shall only address the issues raised in that case as we agree with appellant's position that our decision in this case is dispositive of the issues in the companion appeals. We note that the AOPC has not filed a brief in this case.

On January 3, 1972 appellant Shiomos entered judicial office and became a member of the State Employe's Retirement System (SERS). Act 140 was enacted on July 8, 1978.[5] The Act provides that public employees convicted of any one of the specifically enumerated crimes listed therein at § 1312, shall forfeit their right to receive pension benefits. Appellant's entitlement to receive retirement benefits under the provisions of the State Employes' Retirement Code vested on July 30, 1979 when he purchased 3.3778 years of military service, thus crediting him with the necessary ten years of service.

Appellant began his second term of office on January 4, 1982. On March 1, 1984 appellant retired with 15.5411 years of credited service. Upon retirement appellant withdrew from his pension fund his accumulated deductions (contributions and statutory interest) in the amount of $95,300.70, and began receiving a gross monthly annuity of $1,883.61. Appellant then assumed status as a senior judge. On November 18, 1986 appellant's assignment as a senior judge in the Philadelphia Court of Common Pleas was revoked by order of this Court. Appellant was forever barred from judicial office by order of this Court on November 4, 1987.[6]

On June 29, 1988 appellant was convicted in the United States District Court for the Eastern District of Pennsylvania, of two counts of extortion under the Hobbs Act, 18 U.S.C. § 1951. Appellant's convictions were premised on the fact that he extorted, by use of his position as a Senior Judge of the Court of Common Pleas of Philadelphia County, approximately $300 from Stephen Traitz, Jr. and the Roofer's Union in December of 1985, and approximately $300 from attorney

5. As originally enacted Section 7 of Act 140 provided that the Act "shall be retroactive to December 1, 1972." Section 7 of the Act was declared unconstitutional by this Court in an equally divided opinion in *Miller v. Comm., State Emp. Retirement Bd.*, 498 Pa. 103, 445 A.2d 88 (1981).

6. Following the order of November 4, 1987 by this Court, forever barring appellant from judicial office, the State Employes' Retirement Board (SERB) suspended appellants' pension benefits on July 20, 1988, arguing that said suspension was justified under Article V, Section 16(b) of the Pennsylvania Constitution. That suspension order was subsequently reversed by this Court in *Glancey v. Com., State Emp. Ret. Bd.*, 530 Pa. 481, 610 A.2d 15 (1992).

Barry Denker in October of 1986. On December 8, 1988 the State Employes' Retirement Board (SERB) notified appellant that his pension would be forfeited retroactive to June 29, 1988, the date of appellant's conviction in Federal Court, pursuant to Act 140.[7] The Commonwealth Court affirmed the order of SERB on April 2, 1990. This Court granted appellants' petition for allowance of appeal.

Appellant raises only one issue. He asserts that since his right to receive his pension had vested prior to his commission of the criminal acts violating the express terms of Act 140, taking away his vested pension would be an unconstitutional impairment of contract in violation of Article 1, Section 17 of the Pennsylvania Constitution. Essentially, appellant argues that his retirement contract with the State was fully executed, he had completed the necessary length of service and reached the specified age, and in fact was actually receiving his retirement benefits prior to the commission of the illegal acts; thus forfeiture of his remaining benefits under this scenario would vitiate a completed contract.

■ Before reaching the constitutional question we must initially determine if a senior judge who is presently receiving retirement benefits is subject to the forfeiture provisions of Act 140. The Act defines "Public Official" or "Public Employee" as:

*Any person who is elected or appointed to any public office or employment including justices, judges and justices of the peace* and members of the General Assembly or who is acting or who has acted in behalf of the Commonwealth or a political subdivision or any agency thereof including but not limited to any person who has so acted *and is otherwise entitled to or is receiving retirement benefits whether that person is acting on a permanent or temporary basis and whether or not compensated on a full or part-time basis.*

7. In this particular case appellant had withdrawn his accumulated deductions (contributions and statutory interest) on March 1, 1984, and at that point began receiving a gross monthly annuity benefit of $1,883.61. It is this annuity benefit which is subject to forfeiture at present. Additionally, as noted in n. 3, infra, the medical benefits of appellant Shiomos and appellant Snyder would also be forfeited.

This term shall not include independent contractors nor their employees or agents under contract to the Commonwealth or political subdivision nor shall it apply to any person performing tasks over which the Commonwealth or political subdivision has no legal right of control. *However, this term shall include all persons who are members of any retirement system funded in whole or in part by the Commonwealth or any political subdivision.* For the purposes of this act such persons are deemed to be engaged in public employment.

43 P.S. § 1312; P.L. No. 140, § 2 (emphasis added).

At the time the criminal conduct at issue was committed, appellant, as a senior judge, clearly fit within the definition of "public official" or "public employee" as set forth above.

■ Although appellant does not dispute this point we also find that the federal offense for which appellant was convicted falls within the scope of Act 140. Act 140 provides in 43 P.S. § 1312: "In addition to the foregoing specific crimes, the term ['Crimes related to public office or public employment'] also includes all criminal offenses as set forth in federal law substantially the same as the crimes enumerated herein." The specific crime, violation of the Hobbs Act, is equivalent to one of the enumerated state offenses found at 43 P.S. § 1312(8); namely 18 Pa.C.S. § 4701 (relating to bribery in official and political matters). *See Petition of Hughes,* 516 Pa. 89, 532 A.2d 298 (1987).

■ We now turn to the heart of appellant's argument regarding the constitutionality of the forfeiture of retirement benefits which he has already begun to receive. In support of his position appellant relies upon the decisions of this Court in *Com., ex rel. Zimmerman v. Officers and Employees Retirement Board,* 501 Pa. 293, 461 A.2d 593 (1983) *"Zimmerman I"* and the subsequent Per Curiam opinion on the same case after reargument at *Com., ex rel. Zimmerman v. Officers and Employees Retirement Board,* 503 Pa. 219, 469 A.2d 141 (1983) *"Zimmerman II."*

In *Zimmerman I* the District Attorney of Delaware County brought an action in mandamus against the Officers and Employees Retirement Board seeking to have it discontinue payment of retirement benefits to John Nacrelli, the former Mayor of the City of Chester. Nacrelli had been convicted in Federal District Court for the Eastern District of Pennsylvania of crimes involving the use of his public office, violative of the terms of Act 140.[8]

Nacrelli contributed to the pension plan for officers and employees of the City of Chester from April 6, 1959 through April 27, 1979. He was indicted in Federal Court on May 18, 1978, and Act 140 was enacted 51 days later on July 8, 1978. *Zimmerman I*, 501 Pa. at 296 n. 3, 461 A.2d at 595 n. 3. At the time Act 140 was enacted Nacrelli's right to receive his pension benefits had not yet vested. Nacrelli was convicted on February 6, 1979, and resigned his position as Mayor on April 28, 1979.

In *Zimmerman I* this Court was presented with the fact that the terms of Nacrelli's pension contract had been set prior to the passage of Act 140. The Court found that the passage of Act 140 was a unilateral action affecting Nacrelli's contractual right to receive his pension, as such it could not alter the terms of that existing pension contract absent the mutual consent of both parties. The Court further held that, because Nacrelli had no notice that he would be subject to forfeiture of his pension at the time he committed the criminal acts constituting unfaithful public service, he could not be subject to the terms of Act 140; no deterrent effect would be accomplished by imposing a newly created punishment after the improper acts had already been committed.

In the later opinion, following reargument, the Court reaffirmed the decision to deny mandamus for the same reasons as set forth in *Zimmerman I*. *Zimmerman II*, 503 Pa. 219, 469 A.2d 141.

---

8. Nacrelli was convicted of obstructing state or local law enforcement, 18 U.S.C. § 1511; participating in an enterprise which affected interstate commerce and conspiracy, 18 U.S.C. § 1962(c) and (d); and filing false income tax returns, 26 U.S.C. § 7206(1).

The situation presently before this Court regarding appellant Shiomos is distinguishable from that of the public employee in *Zimmerman I & II*. Although there are similarities to the facts in the *Zimmerman* cases, such as, the terms of Shiomos' pension contract had been set prior to the passage of Act 140 and Shiomos' right to receive his pension benefits had not vested prior to the enactment of Act 140, there is a significant difference. Unlike Nacrelli, appellant Shiomos assumed a second term of office in 1982, subsequent to the effective date of Act 140. This pivotal fact mandates a different outcome than the conclusion reached by this Court in the *Zimmerman* cases.

Admittedly the terms and conditions of Shiomos' pension contract were set in 1972 when he first assumed judicial office. Had Shiomos retired in 1982 without assuming any additional public service his pension contract would not be subject to the forfeiture provisions of Act 140, even though the Act was enacted before his right to receive his pension had vested. *See Zimmerman I & II*. However, when appellant Shiomos assumed his second term in office in 1982 he did so fully aware of the existence of Act 140 and its applicability to public employees in his position. Section 3 of Act 140 declares: "Each time a public officer or public employee is elected, appointed, promoted, or otherwise changes a job classification, there is a termination and renewal of the contract for purposes of this act." 43 P.S. § 1313(c). By assuming his second term in office subsequent to the enactment of Act 140 appellant became subject to Act 140 and the terms and conditions of Act 140 were incorporated into his renewed pension contract. Furthermore, each time appellant was assigned to an additional term as a senior judge his subjacency to the provisions of Act 140 was reaffirmed. Thus, appellant's argument that the forfeiture of his pension violates the *ex post facto* clause in Article I, Section 17 of the Pennsylvania Constitution is unpersuasive.

Further, appellant's argument that only his pension benefits accumulated after 1982 should be subject to forfeiture is rejected in accordance with section 3 of Act 140:

Notwithstanding any other provision of law, no public official or public employee nor any beneficiary designated by such public official or public employee *shall be entitled to receive any retirement or other benefit or payment of any kind* except a return of the contribution paid into any pension fund without interest, if such public official or public employee is convicted or pleads guilty or no defense to any crime related to public office or public employment.

43 P.S. § 1313(a); P.L. 140, § 3 (emphasis added).

■ As a reasonable condition of public employment, the employee reaffirms his commitment to perform his job with honesty and integrity every time he or she begins a new term of office, receives a promotion or appointment, or experiences a change in job classification; regardless of whether such public employment is on a full or part-time basis. With each appointment there is a renewal of the agreement to perform the term of public service without violating Act 140; an agreement which encompasses all that has gone before. Thus, whether or not a public employee's right to receive retirement benefits has vested, or he or she is in actual receipt of benefits, all previous accumulated rights to receive such benefits are subject to forfeiture by and through the "renewed" agreement which is formed each time a person chooses to become a "public official" as defined by § 1312.

It is neither unconscionable nor unreasonable to require honesty and integrity during an employee's tenure in public service. Nor is it violative of the Pennsylvania Constitution to provide that at every new term of employment a public official or employee renews and amends his or her pension contract to include the new public service and to place at risk that which may have already been earned. Such is the nature of the public employment agreement.

Accordingly, we hereby affirm the Orders of the Commonwealth Court, which in turn affirmed the actions of the Retirement Board and of the AOPC.

LARSEN, PAPADAKOS and McDERMOTT, JJ., did not participate in the decision of this case.