Marie E. APGAR, Petitioner,

v.

**STATE EMPLOYES' RETIREMENT SYSTEM, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 21, 1994.

Decided Dec. 21, 1994.

Donald P. Russo, for petitioner.

Nicholas Joseph Marcucci, Deputy Chief Counsel, for respondent.

Before COLINS, President Judge, and DOYLE, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

COLINS, President Judge.

Petitioner Marie E. Apgar seeks review by this Court of the Order of the State Employes' Retirement Board (board) discontinuing the pension benefits Apgar had been receiving in retirement.

The facts are undisputed. Ms. Apgar began service with this Commonwealth in the

Department of Public Welfare (DPW) on July 6, 1971. Her time was interrupted from August 1973 to February 1974 and again from July 1, 1975 to July 19, 1975 when Ms. Apgar took leave without pay. On April 22, 1988, Ms. Apgar was promoted to income maintenance casework supervisor for DPW, and she served the Commonwealth in this position until her voluntary resignation on August 23, 1991.

On August 7, 1992, Ms. Apgar pled guilty to Theft by Deception;[1] Tampering with Records or Identification;[2] and Tampering with Public Records.[3] The Board, bound by the Public Employee Pension Forfeiture Act (hereinafter "Act 140"),[4] issued an order dated December 13, 1993, mandating a forfeiture of those benefits which had inured to petitioner and which either had been or should have been paid to Ms. Apgar as of August 7, 1992. Also, the Board ordered that any monies paid to Ms. Apgar from August 7, 1992, be collected by the Commonwealth from Ms. Apgar.

As of 1971, Ms. Apgar was a member of the State Employees Retirement Plan. Under her membership contract, Ms. Apgar contributed a fixed sum into the retirement fund through deductions from her paycheck over her approximately 20 years of service. On July 8, 1978, Act 140 was enacted by the legislature. Section 3(a) of the Act provides for the mandatory disqualification and forfeiture of benefits upon "conviction[ ] or plea[ ] of guilty or no defense to any crime related to public office or public employment." Section 3(b) defines the conviction or plea as a breach of the public employee's contract with his employer. The employment contract is terminated and renewed "each time a public officer or public employee is elected, appointed, promoted, or otherwise changes a job classification."

Ms. Apgar elected to receive her pension benefits pursuant to both Option 4 and Option 1 of the State Employees Retirement Plan. Option 4 enabled Ms. Apgar to withdraw from her retirement account an amount equal to her total contributions plus the earned statutory interest. The balance of Ms. Apgar's benefits were then to be paid pursuant to Option 1. Option 1 is in the form of a single life annuity having a guaranteed total payment equal to the initial present value of the maximum single life annuity Ms. Apgar was able to receive, minus the lump sum previously paid to Ms. Apgar pursuant to Option 4. Ms. Apgar did apply for and receive a lump sum payment in an amount equal to her total contributions plus earned statutory interest.

Upon learning Ms. Apgar pled guilty to criminal conduct committed during the course of her employment, the board sought to discontinue payment of benefits. After proper notice and review the board did order the discontinuance of benefits and petitioner seeks reversal of that order.

One question Ms. Apgar poses is whether the Pennsylvania Employee Pension Forfeiture Act violates the constitutional prohibition against impairment of obligation of contract when it provides retroactively that pension benefits being received by a retired Commonwealth employee shall be forfeited when the employee pleads guilty to a crime related to public employment.[5] Ms. Apgar asks this Court to consider her question in light of the *Zimmerman I & II*[6] lines of cases rather than *Shiomos v. State Employees' Retirement Board*, 533 Pa. 588, 626 A.2d 158 (1993). For the following reasons we find that Ms. Apgar's situation is not analogous to the *Zimmerman* cases but rather closely mirrors the *Shiomos* case. We, therefore, affirm the decision of the board.

---

**1.** 18 Pa.C.S. § 3922.

**2.** 18 Pa.C.S. § 4104.

**3.** 18 Pa.C.S. § 4911(a)(1).

**4.** Act of July 8, 1978, P.L. 752, 43 P.S. §§ 1311–1315 (Act 140).

**5.** We note that the retroactive application of Act 140 was declared unconstitutional in *Miller v. Commonwealth*, 498 Pa. 103, 445 A.2d 88 (1981).

**6.** *Commonwealth ex rel. Zimmerman v. Officers and Employees Retirement Board*, 501 Pa. 293, 461 A.2d 593 (1983) (Zimmerman I); *Commonwealth ex rel. Zimmerman v. Officers and Employees Retirement Board*, 503 Pa. 219, 469 A.2d 141 (1983) (Zimmerman II).

In *Zimmerman I & II,* our Pennsylvania Supreme Court upheld the decision where this Court opined that when a member of the State Employees Retirement System has both a vested pension prior to the enactment of Act 140 and non-changing continuing employment, the mandate of Act 140 cannot be retroactively applied to that member, or those similarly situated, because such an application results in an impairment of contract. Notably, that line of cases is extraordinarily fact specific.

■■■ Our courts continue to recognize that "[o]nce a contractual obligation vests, no matter how innocuous it may appear, the same cannot be altered, amended or changed by unilateral action." *Zimmerman II,* 503 Pa. at 224, 469 A.2d at 144 (Concurring Opinion of Zappala, J.). Thus, to fall within the ambit of *Zimmerman,* the entire employment period must be unchanging. Here petitioner's employment was not static. Therefore, we conclude there was not a unilateral change in the conditions of employment, but rather a mutual assent to the change in employment. Therefore, the *Zimmerman* cases are not applicable. *Shiomos.*

■■ In *Shiomos,* Justice Cappy, speaking for a majority of the Court, found that "when appellant Shiomos assumed his second term in office in 1982 he did so fully aware of the existence of Act 140 and its applicability to public employees." *Id.* 533 Pa. at 595, 626 A.2d at 162 (1993). Both this Court and the Supreme Court of Pennsylvania in *Shiomos* affirmed section 3 of Act 140 which declares: "Each time a public officer or public employee is elected, appointed, promoted, or otherwise changes a job classification, there is a termination and renewal of the contract for purposes of this act." 43 P.S. § 1313(c).

The record sets forth that petitioner was a worker for DPW beginning in 1971 and was promoted in 1988. In accepting the promotion of 1988 Ms. Apgar affirmed her contract of employment for the purposes of Act 140. It is petitioner's acceptance of her new job as Supervisor which triggered the statutorily-mandated affirmation of the terms of employment.

Petitioner states that while she was promoted, there really was no change in duties. However, petitioner was both promoted and received a change in job classification. Therefore, she is within the purview of Act 140.

Again, petitioner's criminal conduct occurred after petitioner received a promotion. The promotion was an affirmation of the conduct governing state employees and an assent to the terms set forth in Act 140. The Board's action in revoking petitioner's pension benefits as of the date of entry of the guilty plea was proper and well within both case law and the statutory authority granted the Board under Act 140.

■■ Petitioner also asks this Court to distinguish between a "judge" and a "rank and file" worker. Petitioner states that because she is a "rank and file" worker she is not bound by Act 140. Initially, we must note that petitioner did not raise this issue to the Board and therefore the issue is waived. *Wing v. Unemployment Compensation Board of Review,* 496 Pa. 113, 436 A.2d 179 (1981). Nonetheless, due to the future importance of this issue, we will review her argument.

■■ Petitioner does not dispute the point that she is an employee within the meaning of Act 140. Act 140 defines public employee as:

> Any person who is elected or appointed to any public office or employment including justices, judges and justices of the peace and members of the General Assembly or who is acting or who has acted in behalf of the Commonwealth ... or any agency thereof including ... any person who has so acted and is otherwise entitled to or is receiving retirement benefits.... [T]his term shall include all persons who are members of any retirement system funded in whole or in part by the Commonwealth or any political subdivision.

43 P.S. § 1312. We note that the Act specifically includes judges as well as "rank and file" employees. We, therefore, find that petitioner is bound by the Act by virtue of her being an employee of the Commonwealth.

■ Ms. Apgar also asks that this Court compel the Board to invoke its equitable powers and consider whether the revocation of her pension benefits violates those rights provided her as a 43 year-old African–American female under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age in Discrimination in Employment Act of 1967.[7] This question presumes Act 140 has a discretionary provision allowing the board to pursue an alternate course of action.

In 1978 the Legislature enacted Act 140. In so doing, the legislative branch of this Commonwealth, speaking for the citizens of the Commonwealth, established that certain types of conduct would not be rewarded. Because criminal conduct committed in the course of one's employment is a violation of the trust the people of the Commonwealth place in their employees, such conduct shall not be sanctioned. 43 P.S. § 1311. Petitioner cites no authority for her position and after a complete review of the statute, we do not find any language in Act 140 requiring or even suggesting that the retirement board has the power to decline to enforce the proscriptions of Act 140. We therefore find the Board did not have authority to act in a discretionary fashion and not impose the sanctions as dictated by Act 140.

■ Furthermore, in actions alleging violations of civil rights one must do more than allege discriminatory conduct. "A plaintiff, charging that [her] rights have been violated under Title VII, is required to carry the burden of establishing a prima facie case that the defendant engaged in unlawful practices in violation of Title VII." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In the matter before us, petitioner did nothing more than to suggest the Board determine whether imposing Act 140 was a violation of her civil rights. Petitioner presented no case law or legal argument for her position. Petitioner did nothing more than write a letter to the board and claim there was a violation of her

civil rights. There simply is not a scintilla of evidence to support petitioner's claim.

■ We turn now to the final issue in this appeal. Here we believe petitioner has simply misunderstood the order issued by the board. Petitioner asserts the board committed error by failing to mention in its December 13, 1993 order that she is entitled to the return, without interest, of any amount she already has paid into the State Employees Retirement System. Petitioner's argument lacks merit on two grounds. First, Act 140 does in fact permit Ms. Apgar to receive a return of all monies she paid into the pension fund during her tenure with the Commonwealth. 43 P.S. § 1313(a). Second, the payment Ms. Apgar received included a calculation for statutory interest even though the statutory interest was not a required payment. However, the Board's position has been and remains that the statute be construed narrowly so as to protect the rights of annuitants. Since Ms. Apgar's guilty plea was entered after her request for benefits pursuant to option 4, the Board did not seek a return of the statutory interest paid to Ms. Apgar.

The order petitioner challenges states that Ms. Apgar was to cease receiving the benefits of the annuity as provided for under Option 1 of the retirement program as of August 7, 1992 (the date of the guilty plea) and all monies paid to Ms. Apgar from August 7, 1992, were to be returned to the Commonwealth. The Order does not address the Option 4 payment[8] arrangement because those funds were paid to Ms. Apgar on or about January 1992 when Ms. Apgar applied for retirement and elected to receive her benefits pursuant, in part, to Option 4. For the aforementioned reasons, this issue lacks merit.

Accordingly, the order of the State Employes' Retirement Board is affirmed.

### ORDER

AND NOW, this 21st day of December, 1994, the order of the State Employees' Re-

---

7. 29 U.S.C. § 621 *et seq.*

8. Under option 4 Ms. Apgar received a lump sum payment of all contributions paid to the pension

fund plus earned statutory interest during the course of her state service.

tirement Board in the above-captioned matter is affirmed.