# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ross C. Cioppa and Maureen Cioppa,   :
                    Petitioners   :
                               :
             v.            :   No. 1219 C.D. 2014
                               :   Argued:  April 14, 2015
State Employees' Retirement System,   :
                    Respondent   :

BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge[1]
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE LEADBETTER**                **FILED:  August 3, 2015**

This matter is a petition for review filed by Ross C. Cioppa (Mr. Cioppa), a former Magisterial District Judge, and Maureen Cioppa (Mrs. Cioppa), his wife, appealing an order of the State Employees' Retirement Board (Board) denying their appeals of two decisions of the State Employees' Retirement System (SERS) forfeiting Mr. Cioppa's entire accrued pension benefits and Mrs. Cioppa's rights under his pension.  For the reasons set forth below, we affirm.

Mr. Cioppa was a member of SERS from April 13, 1973 until July 31, 1979 as an employee of the Department of Transportation and the Department of Revenue.  Board Opinion at 8; Hearing Officer Findings of Fact (F.F.) ¶¶1-3; Docket No. 2012-29 Joint Stipulation ¶¶1-3, Reproduced Record (R.R.) at 46a.

---

[1] This case was reassigned to the author on June 12, 2015.

When he left state employment in 1979, he filed for and received a refund of his member contributions and interest. Board Opinion at 8; Hearing Officer F.F. ¶4; Docket No. 2012-29 Joint Stipulation ¶4, R.R. at 46a. On June 25, 1999, Mr. Cioppa resumed SERS membership as a District Justice (now Magisterial District Judge)[2] elected for a six-year term. Board Opinion at 8; Hearing Officer F.F. ¶5; Docket No. 2012-29 Joint Stipulation ¶5, R.R. at 46a. In 2000, he purchased his previously withdrawn 6.4122 years of service credit, and in 2004 purchased .5861 years of military service credit. Board Opinion at 8; Hearing Officer F.F. ¶¶6-7; Docket No. 2012-29 Joint Stipulation ¶¶6-7, R.R. at 46a. In 2005, he was re-elected to another six-year term as Magisterial District Judge. Board Opinion at 8; Hearing Officer F.F. ¶8; Docket No. 2012-29 Joint Stipulation ¶8, R.R. at 47a.

On October, 12, 2011, Mr. Cioppa was charged with the criminal offenses of bribery, official oppression and indecent assault and was suspended with pay by the Judicial Conduct Board. Board Opinion at 8; Hearing Officer F.F. ¶9; Docket No. 2012-29 Joint Stipulation ¶9, R.R. at 47a; Docket No. 2012-29 Joint Ex. 1, R.R. at 50a-51a; Docket No. 2012-29 Joint Ex. 2 F.F. ¶¶3-5, R.R. at 55a-56a. Mr. Cioppa resigned from office on December 9, 2011, electing to retire under SERS Option 2, naming Mrs. Cioppa as his survivor annuitant, with a full Option 4 withdrawal of his accumulated deductions. Board Opinion at 8; Hearing Officer F.F. ¶¶10-11; Docket No. 2012-29 Joint Stipulation ¶¶10-11, R.R. at 47a; Docket No. 2012-29 Joint Ex. 2 F.F. ¶6, R.R. at 56a. At the time that he resigned, Mr. Cioppa was 70 years old and had a total of 19.4626 years of credited service in

---

[2] The office of district justice was re-designated as magisterial district judge by the Act of November 30, 2004, P.L. 1618, No. 207.

SERS. Board Opinion at 8; Hearing Officer F.F. ¶¶1 n.1, 10; Docket No. 2012-29 Joint Stipulation ¶10, R.R. at 47a.

On April 12, 2012, Mr. Cioppa pleaded guilty to two charges of official oppression and two charges of indecent assault, for which he was sentenced to six months house arrest and four years' probation, and the bribery charges were withdrawn. Board Opinion at 8; Hearing Officer F.F. ¶12; Docket No. 2012-29 Joint Stipulation ¶12, R.R. at 47a; Docket No. 2012-29 Joint Ex. 1, R.R. at 50a-51a; Docket No. 2012-29 Joint Ex. 2 F.F. ¶¶7, 9, R.R. at 56a-57a. The offenses to which he pleaded guilty arose out of incidents in which he asked for sexual favors from two female tenants in landlord-tenant cases before him in exchange for favorable rulings in their cases. Docket No. 2012-29 Joint Ex. 2 F.F. ¶8, R.R. at 56a-57a. Mrs. Cioppa has been married to Mr. Cioppa since 1964. Board Opinion at 5-6 F.F. ¶34; Docket No. 2012-29 Joint Stipulation ¶20, R.R. at 48a. There is no claim or evidence that Mrs. Cioppa had any involvement in or knowledge of her husband's misconduct or that she benefitted from his misconduct in any way.

On April 20, 2012, the Judicial Conduct Board filed a formal complaint against Mr. Cioppa seeking disciplinary action against him for the conduct admitted in his guilty pleas. Board Opinion at 5-6 F.F. ¶27; Docket No. 2012-29 Joint Stipulation ¶13, R.R. at 47a; Docket No. 2012-29 Joint Ex. 2, R.R. at 53a. On July 24, 2012, the Court of Judicial Discipline ordered, pursuant to Article V, Section 18(d)(1) of the Constitution, that Mr. Cioppa be removed from the office of Magisterial District Judge and that he "shall hereafter be ineligible to hold any judicial office in the Commonwealth of Pennsylvania." Board Opinion at 5-6 F.F. ¶¶28-29; Docket No. 2012-29 Joint Stipulation ¶¶14-15, R.R. at 47a;

Docket No. 2012-29 Joint Ex. 2, R.R. at 64a; Docket No. 2012-29 Joint Ex. 3, R.R. at 65a.

In April 2012, SERS notified the Cioppas that Mr. Cioppa's pension benefits and Mrs. Cioppa's rights under his pension were being forfeited pursuant to the Public Employee Pension Forfeiture Act (PEPFA)[3] as result of his April 12, 2012 guilty plea to charges of official oppression. Docket No. 2012-30 Joint Stipulation ¶13, R.R. at 113a. In August 2012, SERS notified the Cioppas that Mr. Cioppa's pension benefits and Mrs. Cioppa's rights under his pension were being forfeited pursuant to Article V, Section 16(b) of the Pennsylvania Constitution and Section 3352(a) of the Judicial Code, 42 Pa. C.S. § 3352(a), as result of a July 24, 2012 decision of the Court of Judicial Discipline removing him from office and barring him from holding judicial office in the future. Docket No. 2012-29 Joint Stipulation ¶16, R.R. at 47a. The Cioppas appealed the April 2012 and August 2012 forfeitures to the Board. Docket No. 2012-30 Joint Stipulation ¶14, R.R. at 113a; Docket No. 2012-29 Joint Stipulation ¶17, R.R. at 47a; Appeal Letters, R.R. at 1a-5a, 10a-13a, 16a-20a, 97a-101a. Those appeals were consolidated, and the parties submitted the appeals to the Board's hearing officer on stipulated facts and exhibits.

On March 10, 2014, the hearing officer issued findings of fact and conclusions of law recommending denial of the appeals. The Cioppas filed exceptions to the hearing officer's opinion. On June 19, 2014, the Board overruled the Cioppas' exceptions and denied their requests to reinstate pension benefits. In that opinion, the Board adopted the hearing officer's findings of fact and made 12 additional findings of fact based on stipulated facts not included in the hearing

---

[3] Act of July 8, 1978, P.L. 752, No. 140, *as amended*, 43 P.S. §§ 1311-1315.

4

officer's opinion.[4] The Cioppas timely appealed the Board's decision to this Court.[5]

The Board correctly upheld the forfeiture of Mr. Cioppa's pension rights under PEPFA, Article V, Section 16(b) of the Pennsylvania Constitution, and Section 3352(a) of the Judicial Code. Section 3(a) of PEPFA provides:

> Notwithstanding any other provision of law, no public official or public employee nor any beneficiary designated by such public official or public employee shall be entitled to receive any retirement or other benefit or payment of any kind except a return of the contribution paid into any pension fund without interest, if such public official or public employee is convicted or pleads guilty or no defense to any crime related to public office or public employment.

43 P.S. § 1313(a). Official oppression, one of the crimes to which Mr. Cioppa pleaded guilty, is a "crime related to public office or public employment" under PEPFA. Section 2 of PEPFA, 43 P.S. § 1312.

Article V, Section 16(b) of the Pennsylvania Constitution prohibits payment of any retirement benefits to any judge, including a magisterial district judge, who under Article V, Section 18 "is suspended, removed or barred from holding judicial office for conviction of a felony or misconduct in office or conduct which prejudices the proper administration of justice or brings the judicial office

---

[4] The hearing officer had ruled that Mr. Cioppa was entitled to repayment of his purchase of .5861 years of military service credit and the Board reversed that ruling on the ground that Mr. Cioppa had already received a full refund of his contributions. The Cioppas do not challenge the Board's ruling on the military service credit issue in this appeal.

[5] The issues here, questions of statutory and constitutional interpretation, are issues of law as to which our review is plenary. *Heilbrunn v. State Employees' Ret. Bd.*, 108 A.3d 973, 976 n.2 (Pa. Cmwlth. 2015).

5

into disrepute." Pa. Const. art. V, § 16(b).[6] Section 3352(a) of the Judicial Code prohibits payment of any retirement benefits to any judge, including a magisterial district judge, who "is suspended or removed from office under section 18 of Article V or under Article VI of the Constitution of Pennsylvania." 42 Pa. C.S. § 3352(a).[7]

The July 24, 2012 order of the Court of Judicial Discipline satisfies the forfeiture requirements of both of these provisions. It imposed discipline pursuant to Article V, Section 18(d) of the Constitution for conduct in office which is contrary to the proper administration of justice and brings the judicial office into disrepute and ordered that Mr. Cioppa "is hereby removed from office as magisterial district judge." Docket No. 2012-29 Joint Ex. 2, R.R. at 64a ; Docket No. 2012-29 Joint Ex. 3, R.R. at 65a; Docket No. 2012-29 Joint Stipulation ¶¶14-15, R.R. at 47a. In addition, it is sufficient to support forfeiture under Article V, Section 16(b), independent of the removal from office, because, pursuant to Article

---

[6] Article V, Section 16(b) provides:

> Justices, judges and justices of the peace shall be retired on the last day of the calendar year in which they attain the age of 70 years. Former and retired justices, judges and justices of the peace shall receive such compensation as shall be provided by law. Except as provided by law, no salary, retirement benefit or other compensation, present or deferred, shall be paid to any justice, judge or justice of the peace who, under section 18 or under Article VI, is suspended, removed or barred from holding judicial office for conviction of a felony or misconduct in office or conduct which prejudices the proper administration of justice or brings the judicial office into disrepute.

Pa. Const. art. V, § 16(b).

[7] Section 3352(a) of the Judicial Code provides:

> Former and retired judges and magisterial district judges shall receive such compensation as shall be provided by or pursuant to statute. No salary, retirement benefit or other compensation shall be paid to any judge or magisterial district judge who is suspended or removed from office under section 18 of Article V or under Article VI of the Constitution of Pennsylvania.

42 Pa. C.S. § 3352(a).

6

V, Section 18(d) of the Constitution, it also barred him from holding judicial office as a sanction for that conduct. Docket No. 2012-29 Joint Stipulation ¶¶14-15, R.R. at 47a; Docket No. 2012-29 Joint Ex. 2, R.R. at 64a; Docket No. 2012-29 Joint Ex. 3, R.R. at 65a.

Mr. Cioppa does not dispute that his guilty plea satisfies the requirements for forfeiture under PEPFA. Nor does he contest that the conduct for which July 24, 2012 Court of Judicial Discipline order was issued satisfies the requirements for forfeiture under Article V, Section 16(b) of the Constitution and Section 3352(a) of the Judicial Code. Rather, he contends 1) that the pension benefits that he earned prior to the term of office in which he committed the acts for which he pled guilty are not forfeited under PEPFA; and 2) that his pension benefits could not be forfeited under Article V, Section 16(b) of the Pennsylvania Constitution and Section 3352(a) of the Judicial Code because he had retired and was over the age of 70 at the time that Court of Judicial Discipline acted against him. Neither of these arguments has merit. Indeed, both of these arguments have been clearly and expressly rejected by our Supreme Court.

Mr. Cioppa's argument that PEPFA forfeiture is limited to the term of office during which he committed the crime is contrary to the language of Section 3(a) of PEPFA that the public official or employee shall not receive "*any* retirement or other benefit or payment of any kind except a return of the contribution paid into any pension fund without interest." 43 P.S. § 1313(a) (emphasis added). The language of Section 3(c) of PEPFA relied on by Mr. Cioppa, that "[e]ach time a public officer or public employee is elected, appointed, promoted, or otherwise changes a job classification, there is a termination and renewal of the contract for purposes of this act," 43 P.S. § 1313(c), does not place

7

any limit on the forfeiture of all benefits required by Section 3(a) or suggest any intent to limit forfeiture. Rather, it is intended to subject public officials and employees who began their public employment prior the enactment of PEPFA in 1978 to forfeiture of their entire pensions by making a post-PEPFA re-election, reappointment or job change a new contract to which PEPFA's forfeiture provisions can validly apply. *Shiomos v. State Employes' Ret. Bd.*, 626 A.2d 158, 161-62 (Pa. 1993); *Apgar v. State Employes' Ret. Sys.*, 655 A.2d 185, 188 (Pa. Cmwlth. 1994) (*en banc*).

Moreover, the Pennsylvania Supreme Court has addressed this precise issue and held that PEPFA requires forfeiture of all retirement benefits, including those earned in terms of office long before the public official committed any criminal conduct. *Shiomos*, 626 A.2d at 162-63. In *Shiomos*, the Supreme Court ruled that a judge whose pension was vested prior to his re-election and second term of office forfeited his entire pension as a result of a conviction for extortion as a senior judge after his retirement. *Id.* at 160, 162-63. The Court concluded that the language of Section 3(a) of PEPFA required forfeiture of the entire pension, including benefits earned before the judge's second term of office, and explained:

> As a reasonable condition of public employment, the employee reaffirms his commitment to perform his job with honesty and integrity every time he or she begins a new term of office, receives a promotion or appointment, or experiences a change in job classification …. With each appointment there is a renewal of the agreement to perform the term of public service without violating [PEPFA]; an agreement which encompasses all that has gone before. Thus, whether or not a public employee's right to receive retirement benefits has vested, or he or she is in actual receipt of benefits, *all previous accumulated rights to receive such benefits are subject to forfeiture by and through the "renewed" agreement*

8

> *which is formed each time a person chooses to become a "public official" as defined by [Section 3(a)].*
>
> It is neither unconscionable nor unreasonable to require honesty and integrity during an employee's tenure in public service. Nor is it violative of the Pennsylvania Constitution to provide that at every new term of employment a public official or employee renews and amends his or her pension contract to include the new public service and to place at risk that which may have already been earned. Such is the nature of the public employment agreement.

*Id.* at 162-63 (emphasis added); *see also Scarantino v. Pub. Sch. Employees' Ret. Bd.*, 68 A.3d 375, 385 (Pa. Cmwlth. 2013).

Forfeiture of all benefits, including benefits vested before the misconduct and the term in which the misconduct occurred, is likewise required under Article V, Section 16(b) of the Pennsylvania Constitution and Section 3352(a) of the Judicial Code. *Berkhimer v. State Employees' Ret. Bd.*, 60 A.3d 873, 880 (Pa. Cmwlth. 2013). Mr. Cioppa does not dispute this. Instead, he contends that neither of these forfeiture provisions can apply to him because he had already resigned seven months earlier and was 70 years old and therefore constitutionally ineligible from holding judicial office by virtue of his age. *See* Pa. Const. art. V, § 16(b). Mr. Cioppa asserts that these facts render the Court of Judicial Discipline order removing him from office and barring him from future judicial office "meaningless" and "a nullity." Petitioners' Br. at 12, 17, 20. This argument is equally invalid.

The Court of Judicial Discipline has jurisdiction to institute disciplinary proceedings against former judges after they have resigned. *In re Melograne*, 812 A.2d 1164, 1166-67 (Pa. 2002); *In re Ciavarella*, 108 A.3d 983, 987-88 (Pa. Ct. Jud. Disc. 2014). Prior resignation and inability to hold judicial office in the future do not prevent the entry of a valid order removing a judge from

9

office and barring him from holding judicial office. *Melograne*, 812 A.2d at 1167-68; *Ciavarella*, 108 A.3d at 987-88.

In *Melograne*, a former district justice, who had resigned upon his criminal conviction and before the Judicial Conduct Board filed a complaint against him, made the same argument as here that the Court of Judicial Discipline could not validly order that he be removed from office or ban him from holding judicial office in the future, asserting that

> *the facts of this case render each of these sanctions meaningless. He reasons that he cannot be removed from office as he has already removed himself. Furthermore, as Article 2, § 7 of the Pennsylvania Constitution forbids him from holding office* following his conviction for an "infamous crime," *he is effectively barred* from running for office by virtue of his felony conviction. Thus, Appellant deduces, if his actions effectively impose self-punishment, there is nothing left for the Court of Judicial Discipline to accomplish via sanctions.

812 A.2d at 1167-68 (emphasis added). Our Supreme Court rejected that argument and upheld the order removing him from office and declaring him ineligible to hold future judicial office, stating:

> Appellant misapprehends the role of the Court of Judicial Discipline. The Court of Judicial Discipline exists not only to chasten the misbehaving judge; rather, it serves an equally -- if not more -- important function as protector of the integrity of the judiciary and the public's confidence in that branch of government. In disciplining a judicial officer for his misconduct, that tribunal not only punishes the wrongdoer, but also repairs the damaged public trust and provides guidance to other members of the judiciary regarding their conduct. Appellant's conviction and resignation do not accomplish these goals. Therefore, *we cannot equate the voluntary relinquishment of office and the presumption that Appellant's felony conviction would bar him from running for*

10

*public office with the discipline imposed by the Court of Judicial Discipline.* One simply is not a substitute for the other. *We thus hold that Appellant's resignation from judicial office and conviction of a felony crime did not divest the Court of Judicial Discipline of its authority to impose sanctions* on Appellant.

*Id.* at 1168 (emphasis added). The Supreme Court's ruling in *Melograne* is equally applicable here and requires rejection of Mr. Cioppa's challenge to the Court of Judicial Discipline's order.

Accordingly, forfeiture of all of Mr. Cioppa's rights to receive retirement benefits is required by PEPFA, Article V, Section 16(b) of the Pennsylvania Constitution, and Section 3352(a) of the Judicial Code.

Nonetheless, Mrs. Cioppa argues that she has two types of rights in Mr. Cioppa's pension that are not subject to forfeiture, a "marital interest" in his pension and her rights as a survivor annuitant. We disagree.

Mrs. Cioppa has no marital interest that gives her any enforceable rights under her husband's pension. A spouse has a marital property interest in a pension that is recognized in equitable distribution in the event of a divorce, and the State Employees' Retirement Code (Retirement Code), 71 Pa. C.S. §§ 5101-5956, provides for alternate payees pursuant to domestic relations orders. *Glancey v. State Employees' Ret. Bd.*, 610 A.2d 15, 25 (Pa. 1992); *Titler v. State Employees' Ret. Bd.*, 768 A.2d 899, 901 (Pa. Cmwlth. 2001); 71 Pa. C.S. § 5953(a)(3); 71 Pa. C.S. § 5953.1. That, however, does not give a spouse of a SERS member any enforceable interest in the member's pension or right to receive benefits prior to a divorce. *Titler*, 768 A.2d at 901 (estranged spouse had no right to pension death benefits where no divorce was final and no domestic relations order had been issued and Retirement Code permitted member to freely revoke her beneficiary status because "[i]n order for a spouse to acquire an interest in a member's

11

retirement account, a Board approved [domestic relations order] must be issued through the divorce proceedings"); *Hoffman v. State Employees' Ret. Bd.*, 743 A.2d 1014, 1017-18 (Pa. Cmwlth. 2000) (*en banc*) (denial of pension death benefits to estranged spouse who had not yet divorced did not deprive her of property right because equitable distribution of marital property requires a divorce).

Nor do we find merit in Mrs. Cioppa's claim that she has independent pension rights as a survivor annuitant under the Retirement Code. Section 5907(j) of the Retirement Code provides, *inter alia*:

> A member who is eligible and elects to receive a reduced annuity under Option 1, 2, 3, or 4, shall nominate a beneficiary or a survivor annuitant, as the case may be, by written designation filed with the board at the time of his retirement.

71 Pa. C.S. § 5907(j). Mr. Cioppa elected Option 2 at the time of his retirement and named Mrs. Cioppa as his survivor annuitant. That option provides for "[a] joint and survivor annuity payable during the lifetime of the member with the full amount of such annuity payable thereafter to his survivor annuitant, if living at his death." 71 Pa. C.S. § 5705(a)(2). Since nothing is payable to Cioppa during his lifetime, the "full amount" would similarly be zero. Simply put, the option provides for a reduced annuity to the member in exchange for continuation of that annuity to his or her designated survivor for the survivor's life, but where the retired member has forfeited his right to an annuity, there is nothing to continue.

In addition, as noted above, PEPFA unambiguously bars receipt of "*any* retirement or benefit or *payment of any kind*" (except return of contributions), not only to the member whose rights have been forfeited, but also to "*any beneficiary* designated by [him]..." 43 P.S. § 1313 (a) (emphasis added). Mrs. Cioppa correctly points out that under the Retirement Code, beneficiary and

12

survivor annuitant are separately defined terms of art. However, PEPFA makes no such distinction, but uses only the generic term "beneficiary," and we must conclude that the term is used in Section 3(a) in its ordinary sense to include any person designated by the member to receive benefits upon his death. PEPFA is not part of the Retirement Code and applies to other government entities with governing laws that do not use the Retirement Code's terms and definitions. We believe that if the General Assembly had intended to carve out an exception to the harsh terms of Section 3(a) solely for "survivor annuitants" it would have said so explicitly.

Moreover, and perhaps most important, both "beneficiaries" and "survivor annuitants," as those terms are used in the Retirement Code, are those who receive payments as designated survivors upon the death of the member. Under Options 2 and 3, the survivor receives continuation of the member's annuity; under other options, or upon the member's death in state service, the survivor receives a lump sum payment. It would be illogical to assume that the legislature intended to forfeit the lump sum death benefits payable to "beneficiaries," but not the continuing annuities payable to "survivor annuitants."

Accordingly, we affirm the adjudication of the Board.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Ross C. Cioppa and Maureen Cioppa,     :
                          Petitioners     :
                                         :
                     v.                 :     No. 1219 C.D. 2014
                                         :
State Employees' Retirement System,     :
                           Respondent     :

# O R D E R

AND NOW, this 3rd day of August, 2015, the order of the State Employees' Retirement Board in the above-captioned matter is hereby AFFIRMED.

 

 

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge

Ross C. Cioppa and Maureen
Cioppa,

             Petitioners

          v.

State Employees' Retirement
System,

            Respondent

:
:
:
:
:
:
: No. 1219 C.D. 2014
: Argued: April 14, 2015
:
:
:
:
:


BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**CONCURRING & DISSENTING OPINION**
**BY SENIOR JUDGE COLINS**          **FILED: August 3, 2015**

       I concur with the majority's well-reasoned rulings upholding the forfeiture of all of Mr. Cioppa's rights to receive retirement benefits under the Public Employee Pension Forfeiture Act (PEPFA),[1] Article V, Section 16(b) of the Pennsylvania Constitution, and Section 3352(a) of the Judicial Code. I dissent, however, from the majority's affirmance of the forfeiture of Mrs. Cioppa's rights as a survivor annuitant under his pension.

---

[1] Act of July 8, 1978, P.L. 752, No. 140, *as amended*, 43 P.S. §§ 1311-1315.

Mrs. Cioppa has rights in Mr. Cioppa's pension as a survivor annuitant under the State Employees' Retirement Code (Retirement Code).[2] Section 5907(j) of the Retirement Code provides:

> A member who is eligible and elects to receive a reduced annuity under Option 1, 2, 3, or 4, shall nominate a beneficiary or a survivor annuitant, as the case may be, by written designation filed with the board at the time of his retirement. A member who has elected Option 1 may change his designated beneficiary at any time. <u>A member having designated a survivor annuitant at the time of retirement shall not be permitted to nominate a new survivor annuitant unless such survivor annuitant predeceases him or unless the member is awarded a divorce or becomes married subsequent to the election of the option.</u> In such cases, the annuitant shall have the right to reelect an option and to nominate a beneficiary or a new survivor annuitant and to have his annuity recomputed to be actuarially equivalent as of the date of recomputation to the annuity in effect immediately prior to the recomputation. In no other case shall a benefit plan be changed by an annuitant.

71 Pa. C.S. § 5907(j) (emphasis added). Mr. Cioppa elected Option 2 at the time of his retirement and named Mrs. Cioppa as his survivor annuitant in December 2011, prior to his guilty plea and the forfeiture. (Board Opinion at 8; Hearing Officer F.F. ¶11; Docket No. 2012-29 Joint Stipulation ¶11, R.R. at 47a.) Mrs. Cioppa therefore has rights to future payment under the pension that cannot be revoked or altered at will by her husband. Indeed, SERS in its August 2012 letter to Mrs. Cioppa expressly recognized that she had an "entitlement to receive

___

[2] 71 Pa. C.S. §§ 5101-5956.

benefits from Mr. Cioppa's retirement account" as his designated survivor annuitant.  (Docket No. 2012-29 Joint Ex. 4, R.R. at 69a.)[3]

The effect of forfeiture on a spouse's rights in a public official's pension is an issue of first impression.  PEPFA, Article V, Section 16(b) of the Constitution and Section 3352(a) of the Judicial Code do <u>not</u> provide that all rights under the wrongdoer's pension are extinguished or that the pension itself is forfeited or extinguished.  Rather than voiding the pension itself, these forfeiture statutes and constitutional provision prohibit payment of pension benefits to certain persons. Section 3(a) of PEPFA provides:

> Notwithstanding any other provision of law, <u>no public official or public employee nor any beneficiary designated by such public official or public employee shall be entitled to receive any retirement or other benefit or payment of any kind</u> except a return of the contribution paid into any pension fund without

---

[3] Mrs. Cioppa also argues that she has a "marital interest" in her husband's pension.  A spouse has a marital property interest in a pension that is recognized in equitable distribution in the event of a divorce, and provides for alternate payees pursuant to domestic relations orders. *Glancey v. State Employees' Retirement Board*, 610 A.2d 15, 25 (Pa. 1992); *Titler v. State Employees' Retirement Board*, 768 A.2d 899, 901 (Pa. Cmwlth. 2001); 71 Pa. C.S. § 5953(a)(3); 71 Pa. C.S. § 5953.1.  That, however, does not give a spouse of a SERS member any enforceable interest in the member's pension or right to receive benefits prior to a divorce. *Titler*, 768 A.2d at 901 (estranged spouse had no right to pension death benefits where no divorce was final and no domestic relations order had been issued and Retirement Code permitted member to freely revoke her beneficiary status because "[i]n order for a spouse to acquire an interest in a member's retirement account, a Board approved [domestic relations order] must be issued through the divorce proceedings"); *Hoffman v. State Employees' Retirement Board*, 743 A.2d 1014, 1017-18 (Pa. Cmwlth. 2000) (*en banc*) (denial of pension death benefits to estranged spouse who had not yet divorced did not deprive her of property right because equitable distribution of marital property requires a divorce).  Mrs. Cioppa's only rights in her husband's pension that can survive the forfeiture of his pension rights are therefore her rights as a survivor annuitant.

JGC-3

> interest, if such public official or public employee is convicted or pleads guilty or no defense to any crime related to public office or public employment.

43 P.S. § 1313(a) (emphasis added). Article V, Section 16(b) of the Pennsylvania Constitution provides that

> no salary, retirement benefit or other compensation, present or deferred, shall be paid to any justice, judge or justice of the peace who, under section 18 or under Article VI, is suspended, removed or barred from holding judicial office for conviction of a felony or misconduct in office or conduct which prejudices the proper administration of justice or brings the judicial office into disrepute.

Pa. Const. art. V, § 16(b) (emphasis added). Section 3352(a) of the Judicial Code likewise provides that "[n]o salary, retirement benefit or other compensation shall be paid to any judge or magisterial district judge who is suspended or removed from office under section 18 of Article V or under Article VI of the Constitution of Pennsylvania." 42 Pa. C.S. § 3352(a) (emphasis added).

The intent to prohibit pension payments to particular individuals, rather than extinguishing the pension itself is confirmed by another section of PEPFA. Section 4 of PEPFA provides that where the public official's criminal conduct has caused monetary loss to the government, the government is entitled to a restitution order and "[t]he retirement board, administrator of the pension fund or employer of the defendant, upon being served with a copy of the [restitution] order, shall pay over all such pension benefits, contributions or other benefits to the extent necessary to satisfy the order of restitution." 43 P.S. § 1314(a), (b), (d)

JGC-4

(emphasis added). If the effect of forfeiture was the extinguishment of the pension in its entirety, this restitution would be substantially diminished and reduced to payment of the public official's unforfeited contributions, contrary to the language of Section 4(d) that "all such pension benefits" shall be available to provide restitution. The unpublished opinion in *Kenney v. City of Wilkes-Barre Police Pension Fund*, (Pa. Cmwlth. No. 1334 C.D. 2009, filed February 3, 2010), 2010 WL 9512681, relied on by SERS, does not support its contention that forfeiture automatically extinguishes all rights of third parties under the pension. *Kenney* did not involve forfeiture; rather, the question was whether a domestic relations order could alter a pension contract to require survivor rights in favor of an ex-spouse where the pension contract did not provide for such survivor rights. Slip op. at 3, 2010 WL 9512681 at *1.

Nothing in the language of Article V, Section 16(b) of the Constitution nor Section 3352(a) of the Judicial Code suggests any intent to bar a spouse's or other third party's rights to pension benefits. The language of both of these provisions prohibits only payment of pension benefits to the individual who has abused a judicial office, not payment to any other persons under that individual's pension. Mrs. Cioppa's benefits as a survivor annuitant not only are not payments to the individual who abused his judicial office, they are not even payable to her until he is dead. Mrs. Cioppa's rights as her husband's survivor annuitant are therefore not forfeited under Article V, Section 16(b) of the Constitution and Section 3352(a) of the Judicial Code.

The issue of whether PEPFA bars Mrs. Cioppa's rights as a survivor annuitant is a closer question. PEPFA prohibits payment of pension benefits to both the "public official or public employee" and "any beneficiary designated by

JGC-5

such public official or public employee." 43 P.S. § 1313(a). While a survivor annuitant is not a "beneficiary" under the Retirement Code, 71 Pa. C.S. § 5102, PEPFA is not part of the Retirement Code and applies to other government entities with retirement statutes that do not use the Retirement Code's terms and definitions. PEPFA does not define the term "beneficiary." A survivor annuitant designation under the Retirement Code, however, is also different from an ordinary beneficiary designation in that it is not freely revocable. As is discussed above, once the member has designated a survivor annuitant, he has parted with the ability to change his mind and designate a different person to receive those benefits. 71 Pa. C.S. § 5907(j). An existing survivor annuitant designation cannot therefore be changed by the public employee after conviction of a crime or after forfeiture to evade the consequences of the forfeiture. Moreover, the benefits received by a survivor annuitant cannot be used to support the public official who breached the public's trust and thereby nullify the forfeiture, as benefits are paid to the survivor annuitant only after the criminal public official is no longer alive.

The critical question is whether it was the General Assembly's intent by the phrase "any beneficiary designated by such public official or public employee" to deny payment of pension benefits to all individuals who have existing rights to payment of benefits under a wrongdoer's pension, regardless of their lack of involvement in the wrongdoing and regardless of whether benefits paid to them could be used to support the wrongdoer. In construing this language, we must keep in mind that pension forfeiture is not favored and that pension forfeiture statutes are therefore strictly construed. *Mazzo v. Board of Pensions and Retirement of the City of Philadelphia*, 611 A.2d 193, 196-97 (Pa. 1992); *Wiggins*

*v. Philadelphia Bd. of Pensions and Retirement*, 114 A.3d 66, 72 (Pa. Cmwlth. 2015) (*en banc*).

The purpose of PEPFA is to deter commission of crimes by public officials and employees and promote accountability by preventing the public official or employee who committed a crime from receiving the benefit of a taxpayer-funded pension. *Commonwealth v. Abraham*, 62 A.3d 343, 348-49, 351-52 (Pa. 2012); *Luzerne County Retirement Board v. Seacrist*, 988 A.2d 785, 787 (Pa. Cmwlth. 2010). In *Abraham*, our Supreme Court analyzed the purpose of PEPFA in detail in determining whether forfeiture was a direct or collateral consequence of a guilty plea. The Court concluded that "the discussion on PEPFA when it was pending as a bill demonstrates its aim of <u>preventing those who violate the public's trust from receiving the benefit</u> of a taxpayer-funded pension," and that PEPFA is aimed at ensuring and promoting accountability by "<u>preventing those who violate the public's trust from receiving a benefit</u> funded by the public." 62 A.3d at 349, 352 (emphasis added). *See also Seacrist*, 988 A.2d at 787 ("The purpose of the … Act is to deter criminal conduct in public employment by causing a forfeiture of pension benefits to which a public official or public employee would otherwise be entitled").

That purpose of denying taxpayer funded benefits to those who have committed wrongdoing in public office does not show any intent to deny payments to persons who neither committed nor benefitted from the wrongdoing where the funds they would receive cannot be used to benefit or support the wrongdoer. Construing the phrase "beneficiary designated by such public official or public employee" narrowly, as we must, I would hold that it is intended to deny the wrongdoer himself all benefits and rights that he had under the pension, including

JGC-7

his ability to bestow rights in his pension on others and avoid the consequences of forfeiture by transferring his rights to others. So construed, Section 3(a) of PEPFA does not include an already designated survivor annuitant over whose rights the wrongdoer no longer has control and who cannot receive benefits during the wrongdoer's lifetime.

This construction does not permit a wrongdoer who has stolen funds or caused monetary loss to the government to shelter pension benefits from the government's restitution rights. The pension rights of a survivor annuitant or divorced spouse remain fully subject to and subordinate to the government's right to recover its losses under Section 4(d) of PEPFA. 43 P.S. § 1314(d) (requiring that retirement board "shall pay over all such pension benefits, contributions or other benefits to the extent necessary to satisfy [an] order of restitution"); *see also Marshall v. State Employees' Retirement System*, 887 A.2d 351, 357-61 (Pa. Cmwlth. 2005). There is no issue here, however, of monetary harm to the government or restitution that would reduce or negate Mrs. Cioppa's survivor annuitant rights.

I would therefore reverse the order of the State Employees' Retirement Board insofar as it directed the forfeiture of Mrs. Cioppa's rights as survivor annuitant under Mr. Cioppa's pension.

_____
JAMES GARDNER COLINS, Senior Judge

JGC-8