IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Willis W. Berry, Jr.,                  :
                                       :
                    Petitioner         :
                                       :
          v.                           : No. 738 C.D. 2018
                                       : Argued:  September 9, 2019
State Employees' Retirement Board,     :
                                       :
                    Respondent         :


BEFORE:   HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE ROBERT SIMPSON, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED:  October 9, 2019


          Former common pleas court judge Willis W. Berry, Jr. (Petitioner) petitions for review of the May 15, 2018 order of the State Employees' Retirement Board (Board), denying his appeal from a determination by the State Employees' Retirement System (SERS) that his pension was subject to forfeiture, effective December 11, 2015, pursuant to the Public Employee Pension Forfeiture Act (Act 140).[1]  We affirm.

---

[1] Act of July 8, 1978, P.L. 752, *as amended*, 43 P.S. §§1311-1315.  Section 3(a) of Act 140 states:

> (a) Notwithstanding any other provision of law, no public official or public employee . . . *shall be entitled to receive any retirement* or other benefit or payment of any kind except a return of the contribution paid into any pension fund without interest, if such public official or public employee *is found guilty of a crime related to public office or public employment* or pleads guilty or nolo

**(Footnote continued on next page…)**

Petitioner became a member of SERS on January 1, 1996, by virtue of his employment as a Judge of the Philadelphia County Court of Common Pleas. In 2002, he purchased 3.9972 years of credit for active duty military service that was added to his SERS retirement account.[2]

From January 1997 through April 2007, Petitioner operated a real estate business out of his judicial office, and his judicial secretary managed its day-to-day operations. Findings of Fact (F.F.)[3] Nos. 1, 2. In 2009, the Judicial Conduct Board filed a complaint with the Court of Judicial Discipline (CJD) in

**(continued…)**

> contendere to any crime related to public office or public employment.

43 P.S. §1313(a) (emphasis added). Section 2 of Act 140 defines "crimes related to public office" as:

> Any of the criminal offenses as set forth in the following provisions of Title 18 (Crimes and Offenses) of the Pennsylvania Consolidated Statutes . . . when committed by a public official or public employee through his public office or position or when his public employment places him in a positon to commit the crime:
>
> \* \* \*
>
> Section 3926 (relating to theft of services) when the criminal culpability reaches the level of a misdemeanor of the first degree or higher.

43 P.S. §1312.

[2] Petitioner elected to pay for this credit via an actuarial debt on his retirement account. *See Berkhimer v. State Employees' Retirement Board*, 60 A.3d 873, 882 (Pa. Cmwlth. 2013).

[3] The Board adopted and incorporated the Hearing Examiner's Findings of Fact.

which it charged Petitioner with engaging in conduct that brings the judicial office into disrepute, a violation of Article V, §18(d)(1) of the Pennsylvania Constitution.[4] Based upon the parties' stipulations of fact, the CJD held that Petitioner's conduct was such as to bring the judicial office into disrepute and violated Article V, Sections 17(b)[5] and 18(d)(1) of the Pennsylvania Constitution. The CJD agreed that such conduct subjected Petitioner to discipline under Article V, §18(d)(1) and ordered that he be suspended from his judicial office without pay

---

[4] Article V, §18(d)(1) states:

> A justice, judge or justice of the peace shall be subject to disciplinary action pursuant to this section as follows:
>
> (1) A justice, judge or justice of the peace may be suspended, removed from office or otherwise disciplined for conviction of a felony; violation of section 17 of this article; misconduct in office; neglect or failure to perform the duties of office or conduct which prejudices the proper administration of justice or brings the judicial office into disrepute, whether or not the conduct occurred while acting in a judicial capacity or is prohibited by law; or conduct in violation of a canon or rule prescribed by the Supreme Court. In the case of a mentally or physically disabled justice, judge or justice of the peace, the court may enter an order of removal from office, retirement, suspension or other limitations on the activities of the justice, judge or justice of the peace as warranted by the record. Upon a final order of the court for suspension without pay or removal, prior to any appeal, the justice, judge or justice of the peace shall be suspended or removed from office; and the salary of the justice, judge or justice of the peace shall cease from the date of the order.

Pa. Const. art. V, §18(d).

[5] Article V, §17(b) states that Justices and Judges shall not engage in any activity prohibited by law. Pa. Const. art. V, §17(b).

3

for a period of four months. *In re Berry*, 979 A.2d 991 (Pa. Ct. Jud. Disc., 2009). F.F. Nos. 3, 4.

SERS determined that the temporary suspension did not result in a forfeiture of Petitioner's pension benefits under the judicial pension forfeiture provisions of Article V, §18 of the Pennsylvania Constitution and the Pennsylvania Judicial Code, 42 Pa. C.S. §§101-9909. F.F. No. 5.

Following his suspension, Petitioner returned to the bench for an additional two and a half years. His employment as a common pleas court judge terminated on October 5, 2012; he retired with 20.4168 years of credited service with SERS and began receiving his pension.[6]

On May 21, 2014, the Pennsylvania Office of Attorney General charged Petitioner with one count of Theft of Services, 18 Pa. C.S. §3926(b), and one count of Conflict of Interest, 65 Pa. C.S. §1103(a), for operating his personal real estate business out of his judicial chambers from January 1997 through April 2007. Petitioner was convicted of both offenses, each a third degree felony, and he was sentenced on December 11, 2015, to three years' probation.[7] F.F. Nos. 7-9.

By letter dated December 30, 2015, SERS notified Petitioner that his felony conviction of theft of services triggered the forfeiture of his pension under Act 140, effective December 11, 2015. Petitioner appealed.

---

[6] Petitioner executed an application for an annuity on September 5, 2012, which identified his effective date of retirement as October 6, 2012. He elected an Option 3 survivor annuity, identifying his wife as his survivor annuitant. Petitioner also elected to withdraw all of his contributions and interest under Option 4. F.F. No. 6.

[7] Petitioner also was ordered to pay $19,612.50 in restitution, but his resentencing on November 1, 2017, eliminated the requirement to pay restitution to the Commonwealth.

4

A Hearing Examiner conducted a hearing on January 5, 2017. The Hearing Examiner's June 16, 2017 opinion included the Findings of Fact summarized above, based on the parties' statement of chronology (Joint Ex. 1). Based on those findings, the Hearing Examiner concluded that the unambiguous language of Act 140 required the forfeiture of Petitioner's pension benefits. The Hearing Examiner concluded that Act 140 did not support Petitioner's arguments that he was entitled to benefits based on service he performed after his criminal conduct ceased, or that forfeiture of his pension under Act 140 was precluded by the doctrines of equitable estoppel, collateral estoppel, and laches.

The Board denied Petitioner's exceptions to the Hearing Examiner's decision and confirmed the forfeiture of Petitioner's retirement benefits under Act 140. Relying on *Berkhimer v. State Employees' Retirement Board*, 60 A.3d 873, 882 n.16 (Pa. Cmwlth. 2013), the Board rejected Petitioner's contentions that he should be allowed to retain pension credit for his military service, noting that Petitioner could re-purchase his active military service credit if he chooses to return to state service and accrues a corresponding amount of state service credit. 71 Pa. C.S. §5304(c)(2). Similarly, the Board rejected his argument that forfeiture should be limited to exclude contributions made after his criminal activity ceased.

The Board also rejected Petitioner's assertion that SERS' 2009 determination (that his suspension from office did not result in pension forfeiture under Article V, §18) precluded SERS from later determining that his pension was forfeited under Act 140 as a result of a criminal conviction, because the underlying conduct was the same. The Board concluded that collateral estoppel and equitable estoppel did not apply to preclude the forfeiture of Petitioner's pension under Act 140. The Board explained that Act 140 is separate and distinct from Article V,

5

§18; therefore, Petitioner's conduct could - and did - lead to two separate and distinct results: a determination by the CJD that his conduct warranted a temporary suspension, and a decision by the Office of Attorney General to prosecute him under the Crimes Code that eventually resulted in a felony conviction. Each of these results, in turn, carried separate potential consequences for pension forfeiture.

Noting, *inter alia*, that collateral estoppel requires unity of parties, the Board observed that it was not a party to the judicial suspension or the criminal proceeding and is not collaterally estopped from determining that Petitioner's pension is forfeited under Act 140. The Board also rejected Petitioner's equitable estoppel argument, finding the record contained no evidence of misrepresentations by SERS. Further, the Board found that Petitioner knew or should have known that the conduct leading to his judicial suspension could eventually result in a criminal conviction, which, in turn, would subject his pension benefits to forfeiture under Act 140. The Board concluded that laches did not apply because SERS' determination and notice were given to Petitioner within three weeks after his conviction, which was the triggering event for his forfeiture determination.

Finally, the Board noted that Petitioner's constitutional claims, that the forfeiture is punitive and excessive[8] and in violation of due process, did not state whether his claims arose under the United States or Pennsylvania Constitutions. Notwithstanding, the Board concluded that the penalties for his misconduct under the Crimes Code are different from the pension forfeiture

---

[8] At the time, Petitioner argued that the $19,612.50 in restitution ordered by the trial court was sufficient punishment for his crimes. As previously noted, the restitution order in Petitioner's criminal case was later vacated.

required under Act 140, noting that Act 140 is not a criminal statute but rather establishes a condition precedent to eligibility to receive pension benefits.

Accordingly, the Board overruled Petitioner's exceptions, adopted the Hearing Examiner's Findings of Fact and Conclusions of Law, and denied Petitioner's request to reinstate the forfeited pension benefits. Petitioner filed a timely petition for review with this Court.

### **Discussion**[9]

Petitioner first argues that collateral estoppel, equitable estoppel, or laches precludes the forfeiture of Petitioner's pension under Act 140, based on his criminal conviction, when SERS determined in 2009 that the same underlying misconduct and suspension did not require pension forfeiture under Article V, Section 16(b) of the Pennsylvania Constitution and Section 3352 of the Judicial Code, 42 Pa. C.S. §3352.

In relevant part, Article V, Section 16(b) (emphasis added) states:

> Except as provided by law, no salary, retirement benefit or other compensation, present or deferred, shall be paid to any justice, judge or justice of the peace, *who under section 18 . . . is suspended,* removed or barred from holding judicial office for conviction of a felony or misconduct in office *or conduct which* prejudices the proper administration of justice or *brings the judicial office into disrepute*.

Pa. Const. art. V, §16(b).

---

[9] The issues on appeal, questions of statutory and constitutional interpretation, are issues of law as to which our review is plenary. *Heilbrunn v. State Employees' Retirement Board*, 108 A.3d 973, 976 n.2 (Pa. Cmwlth. 2015).

Section 3352(a) of the Judicial Code likewise provides that no salary, retirement benefit or other compensation shall be paid to any judge "who is suspended . . . under section 18 of Article V" of the Pennsylvania Constitution. 42 Pa. C.S. §3352(a). Petitioner was suspended under Article V, Section 18(d)(1), *expressly* for "conduct that brings the judicial office into disrepute." Pa. Const. art. V, §18(d)(1). Per the parties' joint stipulation, because Petitioner "was not removed from judicial office, SERS concluded that his suspension would not result in a forfeiture under Article V, Section 18 of the Pennsylvania Constitution." Reproduced Record (R.R.) at A-122.

Collateral estoppel will prevent relitigation of issues in a subsequent case if all of the following apply: (1) the issue decided in the prior case is identical to that of the subsequent case; (2) the prior case resulted in a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party in the prior case; and, (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. *Rue v. K-Mart Corp.*, 713 A.2d 82, 84 (Pa. 1998). Emphasizing that the underlying facts of both SERS determinations involve the same misconduct, Petitioner asserts that each of the elements of collateral estoppel are satisfied here.

Nevertheless, Petitioner recognizes that there are significant distinctions between the two matters, particularly, that SERS' 2015 determination was triggered by a criminal conviction for theft requiring forfeiture under Act 140, while neither the criminal conviction nor Act 140 was implicated in the 2009 determination. Consequently, the issues in the two proceedings were not identical, and collateral estoppel does not apply.

8

Petitioner argues that because his criminal conviction was delayed for many years after his conduct was known to the CJD, the Judicial Conduct Board, and SERS, forfeiture of his pension is barred by equitable estoppel or laches. We disagree.

A party asserting equitable estoppel against a Commonwealth agency must establish that: (1) the agency intentionally or negligently misrepresented a material fact; (2) the agency knew or had reason to know that the party would justifiably rely on the misrepresentation; and (3) the party acted to his or her detriment by justifiably relying on the misrepresentation. *Carroll v. City of Philadelphia, Board of Pensions and Retirement*, 735 A.2d 141, 144 (Pa. Cmwlth. 1999). While Petitioner argues that he relied on SERS' 2009 decision to work for another two-and-a-half years, he does not identify any misrepresentation by SERS or any prejudice he allegedly suffered when he returned to the bench.

"A party asserting the doctrine of laches must first show that there was a delay caused by the other party's failure to exercise due diligence, and second, prejudice from that delay." *McGaffic v. City of New Castle*, 74 A.3d 306, 317 (Pa. Cmwlth. 2013). Petitioner complains that SERS was aware of his misconduct in 2009. However, he does not dispute that SERS acted promptly after his conviction, which was the triggering event under Act 140.

Based on the forgoing, the Board correctly concluded that the doctrines of collateral estoppel, equitable estoppel, and/or laches did not preclude the forfeiture of Petitioner's pension under Act 140 based on his criminal conviction.

Alternatively, Petitioner argues that the Board erred in determining that he is not entitled to retain the military service credit he purchased or the part of the pension he earned after the illegal activity ceased.

Petitioner relies on *Berkhimer* to argue that he is entitled to retain a portion of his pension. Berkhimer was elected to office as a magisterial district judge in 1987, and he was reelected in 1993 and 1999. In 2002, he purchased 3.5 years of service credit for active duty, non-intervening military service from 1972 to 1976. The CJD removed Berkhimer from his elected office in 2005. In 2006, he became employed with the Pennsylvania Department of Corrections as a corrections officer. Shortly thereafter, SERS notified Berkhimer that his entire accrued pension, including his credited military service, had been forfeited under Article V, Section 16(b) of the Pennsylvania Constitution and Section 3352(a) of the Judicial Code. This Court affirmed the forfeiture of the entire amount of Berkhimer's pension that was attributable to his employment as a magisterial district judge, but we reversed the forfeiture of Berkhimer's accrued military service pension credit, which was not earned during his employment with the Commonwealth.

Petitioner relies on the following excerpt from our decision in *Berkhimer*:

> While we believe that the Board properly determined that Berkhimer's accrued pension benefit was subject to forfeiture, we conclude that Berkhimer's military service credit, which was not earned via his employment with the Commonwealth, was not subject to forfeiture. Rather, the purchase of such a credit is a privilege granted by the legislature in light of an individual's active military service. See Section 5304(c)(2) of the Retirement Code, 71 Pa. C.S. §5304(c)(2) (specifically permitting active SERS members to purchase a maximum of five years of

10

nonintervening military service). . . . Accordingly, we reverse the order of the Board insofar as it directed the forfeiture of that part of Berkhimer's pension attributable to his military service credit.

60 A.3d at 882-83. However, in doing so, Petitioner omits the following pertinent language:

In this regard, we observe that while the military service credit was posted to Berkhimer's retirement account in 2002, *he had not yet paid for this credit*. As noted above, Berkhimer elected to pay for this credit via an actuarial debt on his retirement account, whereby the purchase price and accumulated interest were to be deducted from the present value of his account at the time he retired.[16]

*Id.* (emphasis added) (footnote omitted). Importantly, in footnote 16 the Court observed, "Given the method chosen by Berkhimer for payment of his nonintervening military service and his subsequent removal from office, *the practical effect of our decision here is to permit Berkhimer another opportunity to purchase credit for this service and apply it to his new state pension account as a corrections officer.*" 60 A.3d at 882 n.16 (emphasis added).

Petitioner likewise purchased his military credit via an actuarial debt on his retirement account. If he returns to state service and earns sufficient state service credit,[10] he would have the same opportunity to purchase credit for his military service as did the employee in *Berkhimer.*

Petitioner further asserts that the employee in *Berkhimer* received a state pension as a corrections officer as well as his military pension. Petitioner argues that, pursuant to *Berkhimer*, he should be permitted to receive his accrued pension for the period from May 2007, when his misconduct allegedly ended, to

---

[10] Military service can be purchased by SERS members who have earned a corresponding amount of state-service credit. *See* 71 Pa. C.S. §5304(d).

11

his retirement in October 2012. However, Act 140 explicitly states that, "no public employee shall be entitled to receive *any retirement"* if he is found guilty of a crime related to public office. 43 P.S. §1313(a) (emphasis added). *Berkhimer* involved forfeiture under Article V, Section 16(b) of the Pennsylvania Constitution and Section 3352(a) of the Judicial Code. Consequently, it provides no support for Petitioner's assertion that pension forfeiture under Act 140 can be prorated.

In *Apgar v. State Employes' Retirement System*, 655 A.2d 185 (Pa. Cmwlth. 1994), we explained:

> [In enacting Act 140], the legislative branch of this Commonwealth, speaking for the citizens of the Commonwealth, established that certain types of conduct would not be rewarded. Because criminal conduct committed in the course of one's employment is a violation of the trust the people of the Commonwealth place in their employees, such conduct shall not be sanctioned. 43 P.S. §1311. Petitioner cites no authority for [his] position and after a complete review of the statute, *we do not find any language in Act 140 requiring or even suggesting that the [Board] has the power to decline to enforce Act 140.*

655 A.2d at 189 (emphasis added). Subsequently, in *Public School Employes' Retirement Board v. Matthews*, 806 A.2d 971, 975 (Pa. Cmwlth. 2002),[11] we stated:

---

[11] The employee in *Matthews* was a member of the Public School Employes' Retirement System (PSERS) by virtue of her employment as a cafeteria worker with a school district. Matthews simultaneously worked for the school district in a separate position as a tax collector, but she was not a member of PSERS in that capacity. In her position as tax collector, she embezzled school district funds, and she pled guilty to criminal charges under Section 3927(a) of the Crimes Code, 18 Pa. C.S. §3927(a). Because Matthews earned her pension during her employment as a cafeteria worker but she was convicted of a crime while employed in a separate position as a tax collector, the Public School Employes' Retirement Board filed an action for declaratory judgment seeking a declaration as to whether Act 140 required the forfeiture of her PSERS pension. We determined that Matthews was a public employee at the time she
**(Footnote continued on next page…)**

Act 140 clearly and unambiguously requires a forfeiture of benefits of a public employee who commits a forfeitable offense. And, a statute must be read in accordance with its plain and common meaning when it is clear and unambiguous on its face. Furthermore, Act 140 contains no requirement that the pension benefits that are forfeited be necessarily connected to the public employment related to crime the public employee committed.

806 A.2d at 975 (citation omitted).

In sum, Petitioner urges an interpretation of Act 140 that cannot be reconciled with the express statutory language prohibiting the receipt of *any* retirement benefit by an employee found guilty of a crime related to public office. 43 P.S. §1313(a). Furthermore, Petitioner's return to work after his suspension does not place him in a position different from any other employee who engages in criminal conduct and continues to work and accrue retirement credit after the criminal conduct ceases but before a disqualifying conviction occurs. Accordingly, the Board properly determined that Petitioner is not *currently* entitled to the military service credit he purchased or the part of the pension he earned prior to his conviction but after his illegal activity allegedly ceased. The conviction, not the misconduct, triggers forfeiture under Act 140.

Finally, Petitioner asserts that the forfeiture of his pension was unconstitutional as an excessive fine or a diminution of judicial compensation. Petitioner does not support these assertions with citations to authority or legal analysis. Nevertheless, we note that in *Scarantino v. Public School Employees'*

---

**(continued…)**

committed a crime that was related to public employment, and, therefore, Act 140 required the forfeiture of Matthews' pension.

13

*Retirement Board*, 68 A.3d 375 (Pa. Cmwlth. 2013), we rejected a similar excessive punishment argument and explained that forfeiture under Act 140 results from a breach of the contract between the pensioner and the Board.

> The Excessive Fines Clause of the Eighth Amendment is only implicated if the fine is a punishment. . . . Forfeitures are "fines" if they constitute punishment for an offense. . . . The relationship between [an employee] and the PSERS is contractual in nature. . . . Section 3(a) of [Act 140] provides for the mandatory disqualification and forfeiture of benefits upon "conviction[] or plea[] of guilty or no defense to any crime related to public office or public employment." Section 3(b) provides that the conviction or plea is a breach of the public employee's contract with his employer. In order to receive retirement benefits, an employee must satisfy all of the conditions precedent such as minimum retirement age and requisite years of service. . . . An additional condition precedent for eligibility to receive pension benefits is that an employee cannot have been convicted of one of the enumerated crimes or a substantially the same federal crime. . . . Such a conviction breaches the employee's contract and renders him ineligible to receive pension benefits.

68 A.3d at 384-85 (citations omitted). Additionally, as Petitioner concedes, in *Berkhimer* we held that the forfeiture of a judge's entire accrued pension due to judicial misconduct did not violate the Pennsylvania Constitution's prohibition against diminution of judicial salaries during a term of office.

Accordingly, we affirm the adjudication of the Board.

_____
MICHAEL H. WOJCIK, Judge

Judge Ceisler did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Willis W. Berry, Jr.,                          :
                                               :
                        Petitioner             :
                                               :
            v.                                 : No. 738 C.D. 2018
                                               :
State Employees' Retirement Board,             :
                                               :
                        Respondent             :


O R D E R


AND NOW, this 9th day of October, 2019, the order of the State Employees' Retirement Board, dated May 15, 2018, is AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge