IN THE COMMONWEALTH COURT OF PENNSYLVANIA

D. Bruce Townsend,  :
          Appellant  :
  :
v.  :  No. 1361 C.D. 2022
  :
Northampton Township  :  Submitted:  November 9, 2023

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                            FILED:  January 11, 2024

      D. Bruce Townsend appeals from the August 4, 2022 Order of the Court of Common Pleas of Bucks County (Trial Court) denying his Motion for Partial Summary Judgment (Motion) and granting the Cross-Motion for Summary Judgment (Cross-Motion) filed by Northampton Township (Township).  This appeal arises from the forfeiture of funds in Mr. Townsend's deferred compensation plan (457 plan)[1] pursuant to the Public Employee Pension Forfeiture Act, Act of July 8, 1978, P.L. 752, *as amended*, 43 P.S. §§ 1311-1315 (Forfeiture Act), due to his misappropriation of public funds while employed as Township Manager.  For the reasons that follow, we affirm the Trial Court's Order.

## Background

      In December 1975, the Township passed a resolution establishing a deferred compensation plan for the position of Township Manager.  On February 28, 1980, Mr. Townsend entered into an employment contract with the Township to serve as

---

[1] A "457 plan" is a deferred compensation plan that, for purposes of federal income tax, is governed by Section 457 of the Internal Revenue Code, 26 U.S.C. § 457.

Township Manager until his termination or separation from employment. The contract also authorized his participation in the Township's 457 plan.

Mr. Townsend began his employment with the Township on March 3, 1980. Throughout Mr. Townsend's employment, all funds in his 457 plan were contributed by the Township under the terms of the employment contract. Specifically, the contract stated:

> [The] Township will pay 5% of Mr. Townsend's annual compensation (as presently fixed and as thereafter increased), as deferred compensation to . . . ICMA Corporation's [(ICMA)] deferred compensation plan. Mr. Townsend shall have the rights granted by such plan, including the right to designate beneficiaries and to make supplemental contributions thereto.

Reproduced Record (R.R.) at 57a. The Township did not make any deductions from Mr. Townsend's salary to fund those contributions, nor did Mr. Townsend make any supplemental contributions to the 457 plan from his paycheck. Trial Ct. Op., 10/14/22, at 2.

In November 2006, the Township discovered that Mr. Townsend had misappropriated Township funds by using a Township credit card for personal purchases. As a result, Mr. Townsend resigned from his position, and the Township's Board of Supervisors accepted his resignation and voted to terminate his employment contract with the Township.

In 2007, Mr. Townsend pled guilty to multiple criminal offenses, including theft by failure to make required disposition of funds received (a third-degree felony)[2] and misapplication of entrusted property and property of government or

---

[2] Section 3927 of the Crimes Code, 18 Pa. C.S. § 3927.

financial institutions (a second-degree misdemeanor).[3] Both of these crimes are enumerated in the Forfeiture Act's definition of "[c]rimes related to public office or public employment." *See* Section 2 of the Forfeiture Act, 43 P.S. § 1312.

Following the entry of Mr. Townsend's guilty plea, all of his retirement benefits, including the funds in his 457 plan, were forfeited pursuant to Section 3(a) of the Forfeiture Act, which states:

> [*N*]*o public official or public employee* nor any beneficiary designated by such public official or public employee *shall be entitled to receive any retirement or other benefit or payment of any kind* except a return of the contribution paid into any pension fund without interest, *if such public official or public employee* is found guilty of a crime related to public office or public employment or *pleads guilty or nolo contendere to any crime related to public office or public employment*.

43 P.S. § 1313(a) (emphasis added); *see also* 43 P.S. § 1312 (defining "public employee" as "all persons who are members of any retirement system funded in whole or in part by . . . any political subdivision"). The balance of Mr. Townsend's 457 account at the time of forfeiture was $201,682.60. It is undisputed that this amount was comprised of "*payments made entirely from Township funds*, not any payments made by [Mr.] Townsend." Trial Ct. Op., 10/14/22, at 3 (emphasis added).

On August 17, 2011, Mr. Townsend filed a Complaint against the Township and ICMA, seeking a declaration that they improperly exercised forfeiture against his 457 plan. On December 20, 2011, the parties filed a stipulation with the Trial Court, wherein they agreed to the dismissal of Mr. Townsend's claims against ICMA. After the disposition of the Township's Preliminary Objections, the Township filed an Answer, New Matter, and Counterclaim on April 11, 2012.

---

[3] Section 4113 of the Crimes Code, 18 Pa. C.S. § 4113.

On August 31, 2021, Mr. Townsend filed the instant Motion with the Trial Court,[4] and the Township filed its Cross-Motion on February 2, 2022. On August 4, 2022, following briefing and oral argument by the parties, the Trial Court entered an Order granting the Township's Cross-Motion and denying Mr. Townsend's Motion.

In its subsequent Pa.R.A.P. 1925(a) Opinion, the Trial Court concluded that Mr. "Townsend's deferred compensation benefit with [the] Township was *properly forfeited upon his termination due to criminal activity involving public funds which amounted to a clear breach of his public employment contract*." Trial Ct. Op., 10/14/22, at 8 (citing *Com. v. Abraham*, 62 A.3d 343 (Pa. 2012)). In reaching its decision, the Trial Court underscored that the parties had confirmed on the record that "the funds at issue represented *all deferred compensation payments made by* [*the*] *Township and did not include any personal fund contributions from* [*Mr.*] *Townsend* from his salary." *Id.* at 3 (emphasis added); *see* R.R. at 428a.

In determining whether Mr. Townsend's 457 plan qualified as a "retirement or other benefit" subject to forfeiture under the Forfeiture Act, the Trial Court looked to Section 8.1 of The Fiscal Code, Act of March 30, 1811, P.L. 145, *as amended*, 72 P.S. § 4521.1 (emphasis added),[5] which states that "[s]uch deferred compensation program shall be *in addition to, and not a part of, any other retirement benefit program provided by law* for employes of the county, city, town, or other political subdivision." In other words, Section 8.1 of The Fiscal Code categorizes a deferred compensation plan as an "other retirement benefit program." The Trial Court found that because Section 8.1, which was enacted in 1974, pre-dated Mr. Townsend's

---

[4] Mr. Townsend initially filed a Motion for Summary Judgment on October 27, 2020, which the Trial Court denied as premature because discovery had not yet been completed.

[5] Section 8.1 of The Fiscal Code was added by the Act of July 18, 1974, P.L. 472.

employment contract, it applied to his 457 plan. Trial Ct. Op., 10/14/22, at 5. Therefore, the Trial Court concluded that Mr. Townsend's 457 plan fell within the scope of Section 3(a) of the Forfeiture Act, "which *requires* the forfeiture of *any* '*retirement or other benefit or payment of any kind*.'" *Id.* (quoting 43 P.S. § 1313(a)) (emphasis added).

The Trial Court also found that Mr. Townsend's "eligibility for the deferred compensation benefit was contingent upon his faithful performance of public service under his [employment] contract." *Id.* at 6. As such, his 457 funds were "only to be distributed to [him] upon retirement or agreed-upon amicable separation from the Township *after satisfactorily fulfilling his contractual duties* as a public official." *Id.* at 7 (emphasis in original). Because Mr. Townsend's separation was due to his criminal activity involving public funds, the Trial Court concluded that he forfeited his 457 benefits, along with his other future retirement benefits, under the Forfeiture Act. *Id.* at 7-8.

Mr. Townsend now appeals to this Court.[6]

## Analysis

### 1. Forfeiture Act's Applicability

Mr. Townsend first asserts that Section 3(a) of the Forfeiture Act does not apply to his 457 plan. He contends that *Abraham*, on which the Trial Court relied, is inapplicable here because, although the Supreme Court used the phrase "deferred compensation" in that case, it was referring only to public pensions, not to statutory deferred compensation plans. According to Mr. Townsend, the Trial Court erroneously concluded that *Abraham*'s reference in *dictum* to "deferred

---

[6] "Our standard of review on appeal from the grant or denial of summary judgment is *de novo*, and our scope of review is plenary." *Clean Air Council v. Sunoco Pipeline L.P.*, 185 A.3d 478, 485 (Pa. Cmwlth. 2018).

compensation" means that *all* forms of deferred compensation fall within the Forfeiture Act's purview.

We begin our analysis by reviewing the pertinent language of the Forfeiture Act. Subsection (a) of Section 3 provides that "*no public official or public employee . . . shall be entitled to receive any retirement or other benefit or payment of any kind . . .* if such public official or public employee is found guilty of a crime related to public office or public employment or *pleads guilty . . . to any crime related to public office or public employment*." 43 P.S. § 1313(a) (emphasis added).[7] Subsection (b) of Section 3 further provides that "[s]uch plea, verdict or order *shall be deemed to be a breach of a public officer's or public employee's contract* with his employer." *Id.* § 1313(b) (emphasis added). The plain language of Section 3 does not appear to limit the types of retirement benefits subject to forfeiture, broadly encompassing "any retirement or other benefit or payment of any kind." *Id.* § 1313(a).

We now turn to the *Abraham* case on which the Trial Court relied in interpreting the above statutory language. *Abraham* arose from a criminal matter under the Post Conviction Relief Act, 42 Pa. C.S. §§ 9541-9546. The specific issue before the Supreme Court in *Abraham* was whether the defendant's plea counsel was ineffective for failing to inform him that he would forfeit his state pension upon pleading guilty to indecent assault of a person less than 16 years of age. While the issue before the *Abraham* Court did not arise under the Forfeiture Act, the Supreme Court analyzed in detail the Forfeiture Act's legislative intent and purpose to determine whether pension forfeiture was a direct or collateral consequence of a

---

[7] Our Court has stated that under the Forfeiture Act, "[t]he crime must be committed by such a public official or employee when that employee's public employment places him in a position to commit the crime." *Gierschick v. State Emps.' Ret. Bd.*, 733 A.2d 29, 32 (Pa. Cmwlth. 1999).

6

guilty plea. *See, e.g.*, *Abraham*, 62 A.3d at 348-49 (because the Forfeiture Act itself "contains no statement of purpose," the Supreme Court considered, *inter alia*, the state legislators' public discussions of the Act while it was a pending bill in order to discern its aim). In the end, the Supreme Court held that because pension forfeiture is a non-punitive, civil consequence of the underlying conviction, counsel was not ineffective for failing to advise the defendant of the collateral consequence of his plea. *Id.* at 352-53.

In conducting its analysis, the Supreme Court, applying prior precedent, recognized that the purpose of the Forfeiture Act is to "'promote integrity in public employment by imposing a forfeiture provision that would deter acts of criminal misconduct, thereby[] encouraging public employees to maintain standards of conduct deserving of the public's trust.'" *Id.* at 349 (quoting *Mazzo v. Bd. of Pensions & Ret.*, 611 A.2d 193, 196 (Pa. 1992)). The Supreme Court also explained:

> [The Forfeiture Act] is triggered by a specific class of crimes which are particularly abhorrent when committed by those serving the public; *that a plea to such crimes is deemed a breach of the employment contract suggests strongly that the statute is designed to ensure employees maintain their integrity while in public employment.* That is, *its goal is to restrict future benefits for public employees who commit certain crimes*, a deterrent.

*Id.* at 348 (emphasis added). For this reason, the Court determined that under the Forfeiture Act,

> [a]n employee who breaches his contract forfeits his right to deferred compensation for services rendered in the past. Entitlement to the compensation that is deferred, however, is not without conditions, the relevant one being that *the employee not commit any of the enumerated crimes*.

*Id.* at 349 (emphasis added).

7

Before this Court, Mr. Townsend contends that, as interpreted by *Abraham*, "[t]he Forfeiture Act explicitly authorizes the forfeiture of pensions, but does not mention, much less authorize, the forfeiture of a [s]tatutory [d]eferred [c]ompensation [p]lan." Townsend Br. at 32. Contrary to this contention, however, our courts have not distinguished between statutory deferred compensation plans and pensions with regard to the forfeiture of retirement benefits under the Forfeiture Act. Both pensions and 457 plans are forms of "deferred compensation," as recognized by the Supreme Court in *Abraham*. *See Abraham*, 62 A.3d at 349 ("An employee who breaches his contract forfeits his right to *deferred compensation* for services rendered in the past.") (emphasis added). Although *Abraham* involved a pension, the Supreme Court used the terms "pension" and "deferred compensation" interchangeably in discussing the Act's legislative purpose and did not limit its analysis only to pensions. *See, e.g.*, *Abraham*, 62 A.3d at 349-52. Furthermore, like a pension, Mr. Townsend's 457 plan with the Township was funded *entirely* by public funds. *See* Trial Ct. Op., 10/14/22, at 2-3. There is no distinction between pensions and other forms of deferred compensation earned by public employees for purposes of Section 3(a) of the Forfeiture Act. *See Mazzo*, 611 A.2d at 198 ("It has long been recognized in this Commonwealth that *pensions for public employees* are not mere gratuities provided by the employer, but rather are *deferred compensation for services rendered in the past*.") (emphasis added); *Newport Twp. v. Margalis*, 532 A.2d 1263,1265 (Pa. Cmwlth. 1987) ("[I]t has been held that retirement benefits are deferred compensation, not gratuities, *even where the employee makes no contribution towards the benefits*.") (emphasis in original). We conclude that, by its plain language, Section 3(a) of the Forfeiture Act is applicable not only to pensions,

but to any "retirement" or "other benefits" or "payments of any kind" that inure to a public employee as a consequence of his public employment.

We further conclude that both the plain language of Section 3 of the Forfeiture Act and the Supreme Court's interpretation thereof establish that, since the statute's enactment in 1978, all public employment contracts contain an implied, material term that the employee refrain from committing "crimes related to public office or employment." 43 P.S. § 1312. The Forfeiture Act's directives are clear: a public employee who is convicted of or pleads guilty to an enumerated crime related to public employment forfeits "any retirement or other benefit or payment of any kind," and "[s]uch plea, verdict or order *shall be deemed to be a breach of* [*the*] *public employee's contract* with his employer." *Id.* § 1313(a) and (b) (emphasis added); *see also Scarantino v. Pub. Sch. Emps.' Ret. Bd.*, 68 A.3d 375, 385 (Pa. Cmwlth. 2013) (concluding that, to receive retirement benefits, a public employee must satisfy all conditions precedent, like age and years of service, as well as another condition: the "employee cannot have been convicted of one of the enumerated crimes" in the Forfeiture Act); *Pub. Sch. Emps.' Ret. Bd. v. Matthews*, 806 A.2d 971, 973 (Pa. Cmwlth. 2002) ("Section 3(a) of [the Forfeiture Act] clearly prohibits a public employee from receiving retirement benefits upon conviction of a crime related to public employment.").[8]

---

[8] In his appellate brief, Mr. Townsend cites *Bellomini v. State Employees' Retirement Board*, 445 A.2d 737 (Pa. 1982), in support of his assertion that "[t]he condition of faithful performance is contrary to common law." Townsend Br. at 35-36. However, Mr. Townsend's reliance on *Bellomini* is misplaced, as that case is factually distinguishable. *Bellomini* involved two state legislators who, unlike Mr. Townsend, "had obviously met all of the requirements necessary to receive retirement pay" *prior to* the Forfeiture Act's enactment in 1978. 445 A.2d at 741. The Supreme Court concluded that since the legislators had completed their terms of office and satisfied the conditions of their contracts before the statute's enactment, the Commonwealth could not condition receipt of their retirement benefits on "faithful service" because there was no
**(Footnote continued on next page…)**

There are also strong policy reasons supporting this interpretation of the Forfeiture Act. As Township Manager, Mr. Townsend held a position of public trust with the Township for 26 years. By misappropriating Township funds for his own private use while employed by the Township, he violated that public trust and breached his employment contract by committing acts that constituted "[c]rimes related to public office or employment." 43 P.S. § 1313; *see Abraham*, 62 A.3d at 349 (recognizing that the Forfeiture Act's legislative history demonstrates "its aim of preventing those who violate the public's trust from receiving the benefit of a taxpayer-funded pension"); *Shiomos v. State Employes' Ret. Bd.*, 626 A.2d 158, 163 (Pa. 1993) ("It is neither unconscionable nor unreasonable to require honesty and integrity during an employee's tenure in public service."); *Apgar v. State Employes' Ret. Sys.*, 655 A.2d 185, 189 (Pa. Cmwlth. 1994) ("Because criminal conduct committed in the course of one's employment is a violation of the trust the people of the Commonwealth place in their employees, such conduct shall not be sanctioned.").

Next, Mr. Townsend asserts that the Forfeiture Act does not apply to the funds in his 457 account because those funds were "already received" by him. Specifically, Mr. Townsend asserts:

> [T]he Forfeiture Act, by the including the phrase "entitled to receive," limits forfeiture to those funds to funds the employee is "entitled to receive" (in the future) and not to funds already received. *The record is clear that Mr. Townsend had already received the funds in the 457*

---

preexisting "implied contractual duty of faithfulness"; rather, that condition was later imposed by statute, as set forth in Section 3(b) of the Forfeiture Act, 43 P.S. § 1313(b). *Id.* at 740-41. Therefore, the Court held that the Forfeiture Act was "ineffective as it relate[d] to [the legislators], and all others whose retirement benefits rights had vested *prior to July 8, 1978*." *Id.* at 741 (emphasis added).

[*a*]*ccount before the forfeiture occurred.* Therefore, the funds in the 457 [a]ccount could not be forfeited.

Townsend Br. at 32 (emphasis added). In other words, Mr. Townsend contends that since he earned the 457 benefit attendant to his employment beginning in 1980 and could have voluntarily left his employment anytime thereafter and "cashed out," the benefit was already received by him. We disagree.

Our courts have recognized that deferred compensation is compensation for services rendered in the past that is held by the public employer for the employee's future use and enjoyment. *See, e.g.*, *Com. ex rel. Zimmerman v. Officers & Emps. Ret. Bd.*, 469 A.2d 141, 142 (Pa. 1983) (*per curiam*) ("It is the well[-]settled law of this jurisdiction that the nature of retirement provisions for public employees is that of *deferred compensation for services actually tendered in the past*.") (collecting cases); *Fairview Twp. v. Fairview Twp. Police Ass'n*, 795 A.2d 463, 470 (Pa. Cmwlth. 2002) (same),[9] *aff'd*, 839 A.2d 183 (Pa. 2003). Moreover, our Supreme Court has stated:

> [*W*]*hether or not a public employee's right to receive retirement benefits has vested, or he or she is in actual receipt of benefits, all previous accumulated rights to receive such benefits are subject to forfeiture* by and through the "renewed" agreement which is formed each time a person chooses to become a "public official" as defined by [Section] 1312 [of the Forfeiture Act].

*Shiomos*, 626 A.2d at 162-63 (emphasis added); *see also Abraham*, 62 A.3d at 352 (in concluding that pension forfeiture is non-punitive, the Supreme Court clarified that the public employee "is *not losing something he already had in hand*," but

---

[9] This Court explained in *Fairview Township*: "'When a person undertakes employment, there is usually a trade-off between present compensation and deferred compensation that is activated at retirement. The employe[e] agrees to accept less during his active employment in exchange for benefits during his retirement.'" 795 A.2d at 470 (citation omitted).

rather, "*he is not getting something he would have received but for his misconduct*") (emphasis added).

The 457 plan benefit was a bargained-for term of Mr. Townsend's employment contract with the Township. It is true that Mr. Townsend could have voluntarily separated from his employment and chosen to receive his 457 funds at an earlier time; however, as explained above, he still would have had to refrain from committing a "crime[] related to public employment" for the duration of his employment in order to receive that benefit pursuant to his employment contract. *See Abraham*, 62 A.3d at 349-50 ("Entitlement to the compensation that is deferred[] . . . is not without conditions, the relevant one being that the employee not commit any of the enumerated crimes [in the Forfeiture Act]."). The Trial Court correctly found:

> [Mr. Townsend's] entitlement to the tax-deferred future compensation was contingent upon his faithful completion of his public employment contract with the Township (as was any pension). The deferred compensation benefit was compensation which [he] was merely entitled to receive in the future, like a pension. Importantly, the money paid into the deferred compensation was not taken from his salary, nor voluntarily contributed by him. Rather, it was an additional 5% payment solely by the Township from Township funds specifically for his future use in the [457] plan at issue.

Trial Ct. Op., 10/14/22, at 7. Therefore, we reject Mr. Townsend's claim that he had already received the funds in his 457 plan at the time of forfeiture.

## 2. Fiscal Code

Finally, Mr. Townsend asserts that, in interpreting Section 3(a) of the Forfeiture Act, the Trial Court erroneously looked to Section 8.1 of The Fiscal Code, rather than Section 8.2 of The Fiscal Code. Mr. Townsend points specifically to Section 8.2(h)(1) of The Fiscal Code, which states that "[s]uch deferred

12

compensation plans shall exist and serve in addition to and *shall not be a part of* [*a*] *retirement or pension system* for officers and employees." 72 P.S. § 4521.2(h)(1) (emphasis added).[10] Mr. Townsend also asserts that Section 8.2(h)(4), 72 P.S. § 4521.2(h)(4), prohibits the "involuntary transfer" of assets held in trust in 457 plans created under that section and that "involuntary transfer" necessarily encompasses forfeiture.[11] Thus, Mr. Townsend contends that, under Section 8.2 of The Fiscal Code, the funds in his 457 plan are not subject to forfeiture under the Forfeiture Act. We disagree, because we conclude that Mr. Townsend's 457 plan is governed by Section 8.1 of The Fiscal Code, not Section 8.2.

Section 8.1(a) of The Fiscal Code provides that a political subdivision, such as the Township, may "by contract, agree with any employe[e]" to create a deferred compensation program for the employee. 72 P.S. § 4521.1(a). Importantly, the General Assembly enacted Section 8.1 in 1974, one year before the Township resolution establishing the 457 plan at issue here and six years before Mr. Townsend's employment contract authorizing his participation in the plan. Relevant to this appeal, Section 8.1(e) provides that a deferred compensation plan formed under that section "shall be in addition to, and not a part of, *any other retirement*

_____

[10] Section 8.2 of The Fiscal Code was added by the Act of November 6, 1987, P.L. 394.

[11] Section 8.2(h)(4) of The Fiscal Code provides:

*Any benefit or interest available under a deferred compensation plan established under this section*, or any right to receive or direct payments under such a plan, or any distribution of payment made under such a plan *shall not, except as expressly specified by the plan, be subject to assignment, alienation, garnishment, attachment, transfer, anticipation, sale, mortgage, pledge, hypothecation, commutation, execution or levy, whether by voluntary or involuntary act of any interested person.*

72 P.S. § 4521.2(h)(4) (emphasis added).

13

*benefit program* provided by law for employes of the county, city, town, or other political subdivision." *Id.* § 4521.1(e). This language suggests that a 457 plan formed under Section 8.1 is a "retirement benefit" that falls within the Forfeiture Act's purview. *See* 43 P.S. § 1313(a) (stating that "*any retirement or other benefit or payment of any kind*" is subject to forfeiture upon a conviction for an enumerated offense) (emphasis added).

Section 8.2 of The Fiscal Code was enacted 13 years later, in 1987. Section 8.2(h)(1) states that "[s]uch deferred compensation plans shall exist and serve in addition to and *shall not be a part of* [*a*] *retirement or pension system* for officers and employees." 72 P.S. § 4521.2(h)(1) (emphasis added). However, as the Trial Court correctly determined, Section 8.2 "was enacted several years *after* [Mr.] Townsend's benefit plan was created in 1980 pursuant to his employment agreement with the Township," and, as such, his 457 "plan could not have been created pursuant to Section [8].2 as it did not exist in 1980." Trial Ct. Op., 10/14/22, at 5 (emphasis added). The legislature also did not delete Section 8.1 when it added Section 8.2, demonstrating that Section 8.1 is still applicable to 457 plans established prior to 1987.

Furthermore, Section 8.2(h)(4) of The Fiscal Code, which prohibits the involuntary transfer of assets held in 457 plans, explicitly applies to "[a]ny benefit or interest available *under a deferred compensation plan established under this section.*" 72 P.S. § 4521.2(h)(4) (emphasis added).[12] Again, Mr. Townsend's 457 plan was not "established under" Section 8.2 of The Fiscal Code, as both the

---

[12] Section 8.1 of The Fiscal Code contains no similar prohibition against "involuntary transfer."

Township resolution establishing the plan and his 1980 employment contract authorizing his participation in the plan *pre-dated* Section 8.2's enactment.[13]

The record establishes that Mr. Townsend's 457 plan was formed under the authority of Section 8.1 of The Fiscal Code, not the later-added Section 8.2. Therefore, the Trial Court properly looked to Section 8.1, rather than Section 8.2, in interpreting the language of Section 3(a) of the Forfeiture Act. Section 8.1 of The Fiscal Code refers to a deferred compensation plan as another type of "retirement benefit program" available to public employees. As such, we conclude that Mr. Townsend's 457 plan is a "retirement or other benefit or payment of any kind" that falls within the purview of Section 3(a) of the Forfeiture Act. 43 P.S. § 1313(a).

## Conclusion

We conclude the Trial Court correctly interpreted and applied the relevant provisions of the Forfeiture Act, as interpreted by the Supreme Court in *Abraham*, and The Fiscal Code. The funds in Mr. Townsend's 457 plan were properly forfeited following his entry of a guilty plea to crimes involving public employment enumerated in the Forfeiture Act. Accordingly, we affirm the Trial Court's Order.

_____
ELLEN CEISLER, Judge

---

[13] The primary case on which Mr. Townsend relies to support his argument that Section 8.2 of The Fiscal Code applies to his 457 plan, *D'Amour v. Lower Merion Township* (Pa. Cmwlth. No. 957 C.D. 2018, filed August 30, 2019), is an unreported, non-precedential decision of this Court and did not address the legal question presently before us.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

D. Bruce Townsend,                :
                  Appellant    :
                            :
      v.                     :   No. 1361 C.D. 2022
                            :
Northampton Township     :

# **O R D E R**

AND NOW, this 11th day of January, 2024, the August 4, 2022 Order of the Court of Common Pleas of Bucks County is hereby AFFIRMED.

                            _____
                            ELLEN CEISLER, Judge